## S08A0541. BROWNING v. THE STATE.

(661 SE2d 552)

HINES, Justice.

A jury found Robert L. Browning guilty of felony murder while in the commission of aggravated assault, aggravated assault, and possession of a firearm during the commission of a felony in connection with the fatal shooting of William Roger Bryant. Browning appeals his convictions, challenging the sufficiency of the evidence of his guilt and the effectiveness of his trial counsel. Finding the challenges to be without merit, we affirm.[1]

The evidence construed in favor of the verdicts showed that on the evening of June 24, 1996, Browning shot and killed Bryant outside the home of Billy Luke ("Luke"), an employee of Bryant and a neighbor of Browning. Bryant had come to the neighborhood to speak with his wife, with whom he was having marital problems and who had been visiting Luke's girlfriend at Luke's house. Moments after Bryant's wife left Luke's home, she saw Bryant driving behind her in his "old work truck." The truck was "loud," and when Bryant stopped it, the tires squealed. The couple exited their vehicles and spoke with each other briefly before deciding to continue their discussion at Luke's house rather than in the street. Shortly after the pair arrived at Luke's driveway, Browning approached. Browning was "walking in an angry manner," and was "shaking his finger" until he was "in [Bryant's] face." Browning stated, "Let me tell you one thing, boy." Bryant replied, "Let me tell you one thing. You need to get your ass off of this property." Following this brief verbal exchange, and without any physical contact between the two men, Browning fired a .22 caliber revolver at Bryant. Bryant was unarmed and had

---

[1] The crimes occurred on June 24, 1996. On August 30, 1996, a McDuffie County grand jury returned an indictment against Browning, charging him with malice murder, felony murder while in the commission of aggravated assault, aggravated assault, and possession of a firearm during the commission of a felony. Browning was tried before a jury March 17-18, 1997, and was acquitted of malice murder, but found guilty of the remaining charges. On March 18, 1997, he was sentenced to life in prison for felony murder, a consecutive 20 years in prison for aggravated assault, and five years in prison for possession of a firearm during the commission of a felony to be served consecutively to the sentences for felony murder and aggravated assault. Browning's trial counsel filed a motion for new trial on March 24, 1997. On May 23, 2007, Browning pro se filed a "motion to correct a void and/or illegal sentence," and on June 4, 2007, he pro se filed an "amended motion for new trial in the alternative motion for out of time appeal." Browning was appointed new counsel on July 10, 2007. Following a hearing on October 23, 2007, Browning's motion for new trial, as amended, was denied on November 5, 2007. Also on November 5, 2007, the trial court issued a separate order finding that as a matter of law, the aggravated assault merged with the felony murder for the purpose of sentencing, and vacated the sentence imposed for the aggravated assault. A notice of appeal to the Court of Appeals of Georgia from the judgments of conviction and sentences was filed on November 16, 2007, and an amended notice of appeal to this Court was filed on November 21, 2007. The case was docketed in this Court on December 5, 2007, and the appeal was submitted for decision on January 28, 2008.

nothing in his hands. He threw his hands up in the air, walked four steps, dropped to his knees, and "fell over." Bryant had sustained a fatal gunshot wound to the head; the bullet pierced Bryant's eye and lodged in his brain. Browning returned to his house, told his wife that he had shot Bryant, and telephoned 911.

At trial, Browning claimed that he shot Bryant in self-defense.

1. Contrary to Browning's contention, the evidence was sufficient to enable a rational trier of fact to find him guilty beyond a reasonable doubt of the crimes of which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Browning contends that his trial counsel provided ineffective assistance in several respects. However,

> [t]o prevail on a claim of ineffective assistance of trial counsel, appellant must show counsel's performance was deficient and that the deficient performance prejudiced him to the point that a reasonable probability exists that, but for counsel's errors, the outcome of the trial would have been different. A strong presumption exists that counsel's conduct falls within the broad range of professional conduct.

(Citations and punctuation omitted.) *Sanders v. State*, 283 Ga. 372, 374 (659 SE2d 376) (2008).

(a) Browning first asserts that trial counsel was ineffective for failing to request a jury charge on voluntary manslaughter and for failing to request that the charge conference be recorded so that Browning could argue on appeal that the trial court erroneously refused to give such a charge.

First, the record discloses that trial counsel did file a written request to charge on voluntary manslaughter in the context of mutual combat. See *Walker v. State*, 281 Ga. 521, 525, n. 9 (640 SE2d 274) (2007); *Joyner v. State*, 212 Ga. 269, 270 (2) (91 SE2d 607) (1956). In any event, a jury instruction on voluntary manslaughter was not warranted. The record discloses that Browning's defense was that he shot Bryant in self-defense.

> While jury charges on self-defense and voluntary manslaughter are not mutually exclusive, the provocation necessary to support a charge of voluntary manslaughter is different from that which will support a claim of self-defense. The distinguishing characteristic between the two claims is whether the accused was so influenced and excited that he reacted passionately rather than simply in an attempt to defend himself. Only where this is shown will a charge on voluntary manslaughter be warranted.

(Citations and punctuation omitted.) *Walker v. State*, supra at 524 (6). Browning's own testimony belies the claim that he acted in the heat of passion; instead, it plainly attempted to portray that Browning shot Bryant in order to protect himself. Browning testified that at the time of the shooting, he was a part-time employee of the State Crime Lab and worked with the Georgia Bureau of Investigation; he routinely carried a gun in his pocket for "self-protection"; he witnessed the encounter between Bryant and his wife; he objected to the manner in which Bryant was driving on his street; he wanted to report Bryant to police for reckless driving; that as he approached Bryant, Bryant cursed at him; and that "something needed to be said to that boy." As to the final minutes of the fatal encounter, Browning testified,

> I walked down to the edge of his driveway. I never left the street. He — When he got out of his truck and started towards me that scared me. I mean, the look on his face and he was coming toward me. He throwed out his hands. He was gonna get me. I knew it. This is why I carried this gun, for self-protection.

When Browning was asked "what was going through [his] mind as [Bryant] was coming at [him]," Browning responded:

> To run or get out of there, which I can't run. When I got out of service I had disability on my feet. I can't run. But, I don't know, get away from there, get away from him which I couldn't do. Protect myself the best I could. I'm too old to fight. I can't fight.

When asked specifically what he then did, Browning replied, "Protect myself the best way I could." He further explained that at the time he fired the pistol, he knew that Bryant was close, was about to grab him and do him "great harm," that Bryant lunged at him, and that he was scared. Furthermore, when asked specifically whether he was angry after Bryant had cursed at him, Browning responded: "Not angry as such. I still wanted to talk to him, but he had done scared me then." Browning's version of events is unequivocal in its portrayal of the shooting as out of fear, and not because Browning was provoked. Inasmuch as the evidence at trial did not support any claim that the shooting was the result of provocation as will sustain voluntary manslaughter, a jury charge on voluntary manslaughter was not authorized. *Nelson v. State*, 283 Ga. 119, 121 (2) (b) (657 SE2d 201) (2008).

Because a jury instruction on voluntary manslaughter was not warranted, any failure on the part of Browning's trial counsel to

request and/or pursue its being given cannot constitute the deficient performance necessary to satisfy the first prong of the ineffective assistance of counsel test. *Miller v. State*, 283 Ga. 412 (658 SE2d 765) (2008). What is more, as this Court has determined that the evidence did not support a jury instruction on voluntary manslaughter, Browning's additional claim that trial counsel was ineffective for not requesting that the charge conference be recorded so that Browning could challenge the failure to give such instruction is moot.

(b) Browning also maintains that trial counsel was ineffective because despite leading Browning to believe that he was working on the case, counsel failed to set a hearing on Browning's motion for new trial and that the delay in the post-trial proceedings was tantamount to a denial of due process, warranting the grant of a new trial.[2]

This Court has addressed the proper resolution of claims asserting due process violations based on inordinate appellate delay, and determined that the appropriate analysis is application of the four speedy trial factors set forth in *Barker v. Wingo*, 407 U. S. 514 (92 SC 2182, 33 LE2d 101) (1972), which are the length of the delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant. *Chatman v. Mancill*, 280 Ga. 253, 256 (2) (a) (626 SE2d 102) (2006). Even though Browning does not acknowledge the applicability of the *Barker v. Wingo* analysis, this Court will examine the circumstances of this case in light of such analysis.

At the hearing on the motion for new trial, trial counsel testified that he had been retained by Browning; that he filed a motion for new trial to protect Browning's rights; and that there was "a lot of communication" with Browning's wife about the motion for new trial, both directly by him and by his secretarial staff. Indeed, the record contains several letters from trial counsel to Browning and his wife, spanning a period of roughly two and a half years, relating, inter alia, that the trial transcript had been received and that a hearing on the motion for new trial would be set sometime in the near future. The last letter of record from the attorney, dated January 25, 2000, informed Browning that the attorney was "having a difficult time developing any reversible error," but still indicated that the motion for new trial would be pursued. However, trial counsel further testified that sometime after this last letter, he determined that he was not going to pursue post-conviction relief; that he discussed the

---

[2] Browning is claiming the incompetency of trial counsel and not that he suffered the actual and/or constructive denial of counsel so as to relieve him of the burden of demonstrating prejudice from errors on the part of counsel. In any event, a presumption of prejudice is appropriate only in a very narrow range of cases. *State v. Heath*, 277 Ga. 337, 339 (588 SE2d 738) (2003).

futility of proceeding with Browning's wife; that he advised Browning's wife to communicate to Browning that Browning had the right to pursue the appeal on his own, hire other counsel, or qualify for indigent defense, and that he sent copies of the trial transcript to Browning and to Browning's wife.

As this Court noted in *Chatman v. Mancill*, the length of delay that will raise a constitutional inquiry is dependent upon the peculiar circumstances of the case, and not every delay in the appeal of a case, even an inordinate delay, will implicate an appellant's due process rights. Id. at 257 (2) (b). Here, even though more than ten years elapsed from the time that trial counsel timely filed the motion for new trial and the resolution of the motion for new trial, as amended, there is evidence that much of this delay was caused by Browning's own inaction. As noted, there is evidence that in 2000, trial counsel made plain that he would not pursue the motion for new trial or any other phase of the appellate process because he could not discern any merit in an appeal, and that he further advised that Browning could retain or possibly be appointed new counsel to review his case. Yet, it appears that Browning made no meaningful attempt to secure relief until his partially successful pro se efforts in 2007. Thus, the factors of the length of the delay, the reason for the delay, and Browning's effort to assert his right to post-conviction relief, can be properly resolved adversely to Browning. But, even assuming that such factors are weighed in Browning's favor, he has failed to allege, much less establish, any prejudice as a result of the post-trial delay. Accordingly, application of the *Barker v. Wingo* analysis mandates the finding that neither the actions or inaction of trial counsel resulted in the denial of due process to Browning.[3]

*Judgments affirmed. All the Justices concur.*

DECIDED MAY 19, 2008.

*Harold W. Wallace III*, for appellant.
*Dennis C. Sanders, District Attorney, Thurbert E. Baker, Attorney General, Sara K. Sahni, Assistant Attorney General*, for appellee.

---

[3] Browning does not claim that trial counsel was ineffective for not attempting to secure relief from the initially-imposed improper sentence for aggravated assault. Moreover, the record contains an August 11, 1998, letter from trial counsel to Browning stating, inter alia, "[a]s you know, any aggravated assault sentence should have been merged into your life sentence," and that if the trial judge did not agree, the matter could be taken to this Court. In any event, Browning secured the vacating of the improper sentence.