S11A0120. DAVIDSON v. THE STATE.

(709 SE2d 814)

HUNSTEIN, Chief Justice.

Following a jury trial, appellant Colby Dennell Davidson was convicted of felony murder and two counts of aggravated assault in connection with the shooting death of three-year-old Judah Tucker. Davidson appeals from the denial of his motion for new trial,[1] arguing that the trial court erred by failing to charge the jury on voluntary manslaughter. Discerning no error, we affirm.

1. The evidence at trial authorized the jury to find that Davidson and his family lived across the street from Melvin and Veronica Tucker and their children. On April 25, 2007, Davidson's brother and sister got into an argument with some of the Tuckers' children at the bus stop after school. Davidson heard the commotion and went outside to investigate. The confrontation between the two families escalated to the point that a neighbor called 911. Mr. Tucker testified that when his children arrived home from school, they reported that Davidson had "fired some shots at them at the bus stop." When Mr. Tucker heard what happened, he walked over to the Davidsons'

---

[1] The crimes occurred on April 25, 2007, and a Douglas County grand jury returned a true bill of indictment against Davidson on April 27, 2007, charging him with malice murder, felony murder based on aggravated assault, and two counts of aggravated assault with a deadly weapon. Davidson was tried before a jury beginning on March 24, 2008, and the jury returned a verdict of guilty on all counts except malice murder on March 27, 2008. The jury was unable to reach a verdict on the malice murder count, and the trial court, with the consent of both parties, declared a mistrial on that count. On April 21, 2008, the trial court imposed a life sentence on the conviction for felony murder and a consecutive seven-year sentence on one of the aggravated assault convictions. The other aggravated assault conviction merged with the felony murder conviction. Davidson's motion for new trial, filed April 23, 2008 and amended July 17, 2009, was denied July 28, 2009. A notice of appeal was filed on August 26, 2009. The appeal was docketed to the January 2011 term in this Court and orally argued on January 25, 2011.

house to talk to Davidson's mother. Before he got there, Davidson's sister came flying toward him, screaming and ranting at him. Although Mr. Tucker denied that he also encountered Davidson, a neighbor testified that he saw Mr. Tucker and Davidson arguing in the street and overheard Davidson tell Mr. Tucker that he had a gun and Mr. Tucker respond that he had one too. Mr. Tucker returned home after attempting, unsuccessfully, to visit Davidson's mother.

Ms. Tucker testified that she called her husband while driving home from work and overheard her children saying that Davidson shot at them. Around the same time Ms. Tucker arrived at her house, Davidson's mother and sister walked into the Tuckers' yard and onto the Tuckers' porch. As she walked toward her front door, Ms. Tucker told Davidson's mother and sister to get off her porch and out of her yard. Mr. Tucker pulled Ms. Tucker inside and shut the door. Through the window, Ms. Tucker saw Davidson walk into the yard and join his sister and mother. She yelled at the Davidsons through the window, and when they did not leave, she went outside and began arguing with Davidson and his sister. Ms. Tucker asked Davidson "why are you trying to . . . shoot my son," and told him, "you're going to die with that same gun."

Mr. Tucker followed his wife outside and tried to divert Davidson's attention away from her. Davidson began patting his pocket to indicate that he had a gun, and he then pulled the gun out. Mr. Tucker stated that he told Davidson, "you pull that gun on me, you better use it." Davidson began firing toward Mr. Tucker until the clip was emptied. One of the nine shots struck and killed three-year-old Judah Tucker as he stood just inside the doorway of his home. In a subsequent statement, Davidson admitted that he had never known Mr. Tucker to own a gun and that he had not seen Mr. Tucker with a gun on the day of the incident.

We conclude that the evidence at trial, viewed in the light most favorable to the verdict, was sufficient to enable a rational trier of fact to find Davidson guilty beyond a reasonable doubt of the crimes of which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Davidson argues that the trial court erred by refusing to give his requested charge on voluntary manslaughter. Voluntary manslaughter occurs when a defendant kills a person "under circumstances which would otherwise be murder and if he acts solely as the result of a sudden, violent, and irresistible passion resulting from serious provocation sufficient to excite such passion in a reasonable person." OCGA § 16-5-2 (a). Davidson does not contend that the three-year-old homicide victim provoked him but rather argues that all of the "chaotic and angry events" in the neighborhood that day constituted serious provocation. Assuming arguendo that serious

provocation may come from someone other than the victim, see *Foster v. State*, 264 Ga. 369 (1), n. 2 (444 SE2d 296) (1994), Davidson's claim of error fails for want of slight evidence supporting his requested charge. See *Carter v. State*, 270 Ga. 637 (4) (514 SE2d 19) (1999).

Davidson testified at trial and denied that he had fired shots at the bus stop. He stated that after he encountered Mr. Tucker outside of the Davidsons' home, he went inside and changed into a pair of pants that happened to have his gun in one of the pockets. When he looked out the window and saw his mother walking up the Tuckers' driveway, he decided to follow her to explain what had happened. According to Davidson, when Mr. and Ms. Tucker came outside to confront him, they yelled and cursed at him, saying things like, "you dead," and "I'm going to kill you," and Mr. Tucker progressed toward him and put his hand behind his back under his shirt like he was reaching for a weapon. Davidson claimed that his mind "went into defense mode and I pulled my gun out and I started firing." Davidson testified that he was not upset when he pulled his gun out but "was scared that potentially me or my mother might get shot or die." He later reiterated that he opened fire "because I felt my life was in danger," and that when he pulled the trigger he "meant to defend [his] life."

Based on this testimony, the trial court instructed the jury on the law of justification and defense of self or others.

> While jury charges on self-defense and voluntary manslaughter are not mutually exclusive, the provocation necessary to support a charge of voluntary manslaughter is different from that which will support a claim of self-defense. The distinguishing characteristic between the two claims is whether the accused was so influenced and excited that he reacted passionately rather than simply in an attempt to defend himself.

(Citation and punctuation omitted.) *Walker v. State*, 281 Ga. 521, 524 (6) (640 SE2d 274) (2007). "A charge on voluntary manslaughter is not available to a defendant whose own statement unequivocally shows that he was not angered or impassioned when a killing occurred, and when the other evidence does not show otherwise." (Footnote omitted.) *Worthem v. State*, 270 Ga. 469, 471 (2) (509 SE2d 922) (1999). Davidson's testimony that he was not upset but fired out of fear and to defend his and his mother's life shows that he did not shoot Judah Tucker in the heat of passion, and the other evidence is not to the contrary. Rather, the testimony of Mr. and Ms. Tucker, the only other trial witnesses present during the shooting, demon-

strates, at most, that Davidson may have opened fire in response to Mr. and Ms. Tucker's heated or angry statements, which, as a matter of law, could not constitute "serious provocation" within the meaning of OCGA § 16-5-2 (a). See *Riggins v. State*, 279 Ga. 407 (2) (614 SE2d 70) (2005) (words alone cannot constitute the serious provocation which will reduce killing from murder to manslaughter). As such, the trial court did not err by refusing to charge the jury on voluntary manslaughter. See *Browning v. State*, 283 Ga. 528 (2) (a) (661 SE2d 552) (2008) (defendant was not entitled to voluntary manslaughter charge when his version of events portrayed shooting during verbal altercation as resulting from fear); *Jackson v. State*, 282 Ga. 494 (4) (651 SE2d 702) (2007) (trial court did not err by refusing to charge jury on voluntary manslaughter when the State's evidence did not warrant charge and defendant's testimony showed that he was attempting to repel attack, not that he was so angered that he reacted passionately); compare *Webb v. State*, 284 Ga. 122 (4), n. 2 (663 SE2d 690) (2008) (defendant's description of altercation and statement that he may have "overreacted" provided slight evidence supporting voluntary manslaughter charge).

*Judgment affirmed. All the Justices concur.*

DECIDED MAY 16, 2011.

*J. Scott Key*, for appellant.

*David McDade, District Attorney, James A. Dooley, Assistant District Attorney, Thurbert E. Baker, Attorney General, Paula K. Smith, Senior Assistant Attorney General, Sheila E. Gallow, Assistant Attorney General*, for appellee.