S11A1015. FUNES v. THE STATE.
(716 SE2d 183)

NAHMIAS, Justice.

Appellant Alex Funes was convicted of the murder of Daniel Sentillan and other crimes after a pool hall fight in Clayton County. He challenges the sufficiency of the evidence against him, the trial court's refusal to give a voluntary manslaughter jury instruction, the effectiveness of his trial counsel, the admission of his post-arrest statement, and the trial court's sustaining an objection to his cross-examination of a State witness. We affirm.

1. The evidence at trial, viewed in the light most favorable to the verdict, showed the following.[1] On November 14, 2008, the victim

---

[1] The crimes were committed on November 14, 2008. On February 26, 2009, Appellant was jointly indicted with Joncarlo Ibarra for malice murder, felony murder, three counts of aggravated assault, possession of a firearm during the commission of a crime, and two counts of street gang terrorism. Appellant was tried separately, and the jury returned a guilty verdict on all counts except one aggravated assault count on June 17, 2010. The trial court sentenced Appellant to life in prison for the malice murder of Sentillan, 20 years consecutive for aggravated assault against Eduardo Vargas, five years consecutive for the firearm conviction,

accompanied Eduardo Vargas and three other men to a local pool hall. Vargas, the only gang member in the group, encountered members of a rival gang on his way to the restroom. One of the rivals, Appellant, got in Vargas's face and started arguing. Vargas pushed him, and Appellant removed his shirt to reveal a white tank top. The two groups then began to fight. The brawl spilled out into the parking lot, where someone yelled, "Get the gun." Appellant — identifiable by his white tank top and by distinctive tattoos on his chest, neck, and shoulders — then drew a .380 caliber pistol, and as Vargas and his group, who were all unarmed, started running for their car, Appellant opened fire. One bullet, fired from "intermediate range," struck the victim in the head and killed him. Police recovered three .380 caliber shell casings from the scene, all fired from the same gun.

Upon hearing a description of the shooter and his tattoos, a police officer familiar with Appellant from his work obtaining information on local street gangs believed he might be the gunman. After an eyewitness identified Appellant in a photo lineup as the shooter, he was arrested and taken to a police precinct, where he read and signed a form waiving his *Miranda* rights. Appellant then admitted that he had fired three shots from a .380 caliber pistol on the night in question and that he was wearing a white tank top when he opened fire, although he claimed to have done so in self-defense.

At trial, an eyewitness again identified Appellant as the shooter, and other witnesses described the shooter by reference to his white tank top and tattoos. Appellant then took the stand. He claimed that he heard someone yell, "Get the gun," and then saw Vargas reach into a car, prompting Appellant to flee while shooting backwards. "I was just scared," he said. The jury was charged on justification, including self-defense and mutual combat.

Appellant disputes the accuracy and credibility of the eyewitness testimony and views his own statement and testimony in the light most favorable to his defense. However, when properly viewed in the light most favorable to the verdict, the evidence presented at trial and summarized above was sufficient to authorize a rational jury to reject Appellant's justification defense and find him guilty beyond a reasonable doubt of the crimes for which he was convicted. See *Jackson v. Virginia*, 443 U. S. 307, 319 (99 SC 2781, 61 LE2d 560)

and 15 years consecutive for each count of street gang terrorism. The felony murder conviction was vacated by operation of law, and the remaining aggravated assault conviction merged for sentencing purposes. On June 25, 2010, Appellant filed a motion for new trial, which he amended on November 23, 2010. On January 27, 2011, the trial court denied the motion after a hearing. Appellant filed a timely notice of appeal, and the case was docketed in this Court for the April 2011 term and submitted for decision on the briefs.

(1979). See also *Vega v. State*, 285 Ga. 32, 33 (673 SE2d 223) (2009) (" 'It was for the jury to determine the credibility of the witnesses and to resolve any conflicts or inconsistencies in the evidence.' " (citation omitted)).

2. Appellant argues that the trial court erred by denying his request to charge on the lesser included offense of voluntary manslaughter. Pointing to his testimony that someone yelled, "Get the gun," in the midst of a fight and that he then saw Vargas reach into a car as the sources of his provocation, Appellant contends that there was some evidence that he acted "solely as the result of a sudden, violent, and irresistible passion resulting from serious provocation sufficient to excite such passion in a reasonable person." OCGA § 16-5-2 (a) (defining voluntary manslaughter). See *Nichols v. State*, 275 Ga. 246, 246-247 (563 SE2d 121) (2002).

That evidence, however, did not support a voluntary manslaughter instruction. This Court has repeatedly held that neither fear that someone is going to pull a gun nor fighting prior to a homicide are types of provocation demanding a voluntary manslaughter charge. See, e.g., *Hicks v. State*, 287 Ga. 260, 263-264 (695 SE2d 195) (2010); *White v. State*, 287 Ga. 208, 210 (695 SE2d 222) (2010); *Nichols*, 275 Ga. at 246-247. Moreover, Appellant testified that he fired because he was "just scared," and acting out of fear is not the same as acting in the heat of a sudden irresistible passion. See *Davidson v. State*, 289 Ga. 194, 196-197 (709 SE2d 814) (2011).

3. Appellant raises a series of challenges to the effectiveness of his trial counsel. To prevail on any of these claims, Appellant

> must show that his trial counsel provided deficient performance and that, but for that unprofessional performance, there is a reasonable probability that the outcome of the proceeding would have been different. See *Strickland v. Washington*, 466 U. S. 668, 687, 694 (104 SC 2052, 80 LE2d 674) (1984).

*Long v. State*, 287 Ga. 886, 891 (700 SE2d 399) (2010).

(a) Appellant contends that his counsel was deficient in failing to suppress the identifications of him made by eyewitnesses before and during trial. He says that the witnesses' pretrial accounts of the shooter were too inconclusive and inconsistent to be admissible and that the in-trial identifications were tainted by the pretrial identifications. However, his trial counsel could not have suppressed the identification evidence — pretrial or during trial[2] — on the theory

---

[2] See *Sharp v. State*, 286 Ga. 799, 803 (692 SE2d 325) (2010) ("Because Sharp's challenge

that various witnesses' accounts of the shooter were inconclusive or inconsistent. These issues regarding the eyewitnesses' credibility were for the jury to resolve, as constitutional due process requires the exclusion of identification evidence only where the evidence results from state action, like an unduly suggestive identification procedure administered by the police. See *Lyons v. State*, 247 Ga. 465, 467 (277 SE2d 244) (1981). Appellant makes no argument on appeal that the pretrial identification procedures used by the police here were unduly suggestive, and, in any event, his argument below to this effect was correctly rejected by the trial court. His trial counsel's decision not to pursue this meritless issue does not constitute ineffective representation. See *Williams v. State*, 276 Ga. 384, 387 (578 SE2d 858) (2003).

(b) Appellant argues that his trial counsel was ineffective in failing to prepare to cross-examine a ballistics expert called by the State. At trial, Appellant's counsel initially objected to the expert, saying that the State had not notified him about the witness. When the State explained that it had in fact notified him, counsel withdrew his objection. Appellant has not shown that this represented deficient performance. His counsel testified at the motion for new trial hearing that he had reviewed the ballistics evidence and so he was prepared to question *a* ballistics expert, regardless of the expert's identity, and counsel did indeed cross-examine the expert the State called. Cross-examination is grounded in trial strategy and rarely results in constitutionally deficient performance, even if aspects of the examination are challenged in hindsight. See *Simpson v. State*, 277 Ga. 356, 359 (589 SE2d 90) (2003). Moreover, Appellant has not shown how any aspects of his counsel's cross-examination of the ballistics expert prejudiced him.

(c) Similarly, Appellant has failed to support his claim that his counsel did not adequately prepare him to be cross-examined at trial. Appellant contends that his counsel "only saw him several times" and "failed to advise [him] of the consequences of testifying." His counsel testified at the motion for new trial hearing, however, that he met with Appellant in jail and discussed what Appellant was going to say on the stand, how his testimony could "hue to the broad outlines" of his post-arrest statement, and how to deal with "troublesome areas." Appellant also admitted that his counsel told him he would be cross-examined by the district attorney, a point the trial court repeated before he testified.

The trial court's decision to credit this account of Appellant's

to the in-court identification depends upon his contention that the out-of-court identification was unlawful, that challenge also fails.").

preparation to testify was not clearly erroneous, see *Dockery v. State*, 287 Ga. 275, 277 (695 SE2d 599) (2010), and we cannot conclude that this level of preparation fell below the "broad range of reasonable professional conduct." *Harvey v. State*, 284 Ga. 8, 10 (660 SE2d 528) (2008). Not only is there no "magic amount of time which counsel must spend in conference with his client," id. at 11, but Appellant admitted that he did not decide to testify until the trial had already commenced. See id. ("Counsel's failure to prepare appellant prior to trial was not deficient performance inasmuch as counsel was not made aware until the morning of trial that appellant had decided to testify."). And again Appellant has not demonstrated how his purported unpreparedness affected the outcome of his case. See id.

4. Appellant complains that the trial court erred by refusing to exclude his post-arrest statement admitting that he was the shooter. He argues that the statement was inadmissible because (1) he was not adequately informed of his *Miranda* rights and (2) the detective twice told him that he could receive the death penalty. However, Appellant does not explain how the *Miranda* warnings were inadequate. He was advised of his rights both verbally and in writing, and he signed a waiver. Moreover, a detective testified at the *Jackson-Denno* hearing that he secured Appellant's *Miranda* waiver before interrogating him, and the trial court was entitled to credit that testimony. See *Sosniak v. State*, 287 Ga. 279, 280 (695 SE2d 604) (2010).

As for Appellant's argument that his statement was involuntary because the detective mentioned the death penalty, we have held that alerting a suspect that the crime is potentially punishable by death is simply an " 'explanation of the seriousness of [his] situation.' " *Sosniak*, 287 Ga. at 288-289 (quoting *Preston v. State*, 282 Ga. 210, 212 (647 SE2d 260) (2007)). It does not render a statement inadmissible under either the Constitution or OCGA § 24-3-50. See id.

5. Finally, Appellant asserts that the trial court erred when it limited his cross-examination of the detective who interrogated him. After the detective admitted that he had told Appellant the murder was punishable by death, Appellant's counsel began to question the officer about his testimony at a prior hearing. Counsel asked the witness to confirm that he had previously testified that he told Appellant the offense was a "capital crime" only to suggest that it was a "serious" offense, not necessarily a "death penalty" offense. And counsel asked the witness to confirm that he had asked at the hearing whether Georgia even had the death penalty. The State then objected, arguing that Appellant's counsel should either confine his questions to the witness's trial testimony or use the prior testimony for impeachment purposes, but should not simply review "another hearing that might have been had without showing how it is impeachment." The

trial court sustained the objection, telling Appellant's counsel, "I believe you know what you can do with that document," and adding, "I'll entertain any appropriate objections as they come up." Counsel then moved on to other questions. Appellant now argues that the court should have overruled the objection and allowed his counsel to continue the line of questioning to impeach the detective.

We cannot say, however, that the trial court abused its "broad discretion in determining the scope of cross-examination." *Sims v. State*, 280 Ga. 606, 608 (631 SE2d 656) (2006). To begin with, it is not true that the court stopped Appellant's counsel from impeaching the detective. Counsel had not clearly laid a proper foundation to impeach the witness and instead had begun just marching the witness through his prior testimony. The State objected to require defense counsel to follow the proper impeachment procedure, while noting that "if he wants to use that [prior testimony] for impeachment purposes, the State's not going to object to that." The trial court agreed, admonishing counsel that he was not using the prior statement properly but inviting him to proceed by the rules. Thus, the court merely imposed reasonable limits on cross-examination, and in any event the court's rulings hardly "cut[ ] off all inquiry on" the subject. See *State v. Vogelson*, 275 Ga. 637, 639 (571 SE2d 752) (2002). By the time the State objected, Appellant's counsel had already elicited the admission that the detective had previously testified he told Appellant that his offense was a "capital crime," supposedly meaning a "serious" crime, instead of using the term "death penalty." The detective readily acknowledged the discrepancy. Appellant does not say what more his counsel could have accomplished had he continued the line of questioning.

*Judgment affirmed. All the Justices concur.*

DECIDED OCTOBER 3, 2011.

*Brandon Lewis*, for appellant.

*Tracy Graham-Lawson, District Attorney, Adeline N. Alexander, Billy J. Dixon, Assistant District Attorneys, Samuel S. Olens, Attorney General, Paula K. Smith, Senior Assistant Attorney General, Elizabeth A. Harris, Assistant Attorney General*, for appellee.