302 Ga. 786
FINAL COPY

S17A1495. BURKE v. THE STATE.

PETERSON, Justice.

William Burke appeals his convictions for felony murder and possession

of a firearm during the commission of a felony, charges stemming from the

death of Andrew Daly.[1] He argues that the trial court improperly limited the

jury's consideration of voluntary manslaughter to a lesser offense of only malice

murder, both in its oral instructions and on the verdict form, so that the jury had

no option to consider the lesser offense in relation to the felony murder charge.

Finding that the trial court committed no plain error in this regard because the

---

[1] Daly was killed on November 25, 2012. Burke was indicted on February 14, 2013, for malice murder, felony murder, aggravated assault, and possession of a firearm during the commission of a felony. An August 2014 trial resulted in a mistrial when the jury could not reach a unanimous verdict. Burke stood trial again from September 29 to October 3, 2014, and was acquitted of malice murder but found guilty of the other counts. The trial court sentenced Burke to life for the felony murder conviction plus a five-year consecutive sentence for the firearm possession count, merging the aggravated assault count into the felony murder count. Burke filed a motion for new trial that he later amended. The trial court denied the motion on October 11, 2016. Burke filed a timely notice of appeal, and the case was docketed to the August 2017 term and submitted for decision on the briefs.

evidence did not support a finding of voluntary manslaughter, we affirm.

The victim in this case was the boyfriend of Burke's ex-girlfriend and landlord, Evangeline Sotus. Burke and Sotus had a long-term romantic involvement before breaking up in early 2011. Sotus testified that she was concerned about Burke's belligerence when he drank. After their break-up, Burke moved into the top level of Sotus's home. In the summer of 2012, Sotus met Daly, and the two became romantically involved. Sotus observed that the two men were civil to one another.

On November 20, 2012, Sotus traveled to New York. She informed Burke that Daly would be checking on her cats and had permission to be in the house. Burke and Daly apparently continued to be civil to one another; Daly even made breakfast for Burke the morning of November 25.

In phone conversations with Sotus later that day, Burke seemed to be intoxicated. At one point, Burke called Sotus and informed her that his ex-wife had died. She urged Burke to sober up, leading Burke to become belligerent and call and text her repeatedly. Sotus called Daly and warned him to stay away from her house, but Daly did not seem concerned, and said he wanted to go there to do laundry.

Meanwhile, Burke posted on Facebook that Sotus "was a total waste" when he needed her and that her boyfriends should "watch out." Burke called a friend, Gerald Landers, who noted that Burke seemed extremely intoxicated. Burke cut off their conversation, indicating that he had an unexpected visitor; Landers heard Burke say, "Who's there, who's there."

The lower-level tenant of Sotus's house, Valetta Anderson, heard footsteps above, then arguing and shouting. Anderson heard someone other than Burke say "motherf***er." She heard a "pop" sound, then someone falling. Burke promptly knocked on Anderson's door and asked her to accompany him upstairs to the main level, where she saw Daly lying on the floor. Burke told Anderson that Daly "came at" him and asked her to call 911.

Police who arrived at the home found Daly dead of a gunshot wound to the head. They observed nunchucks on the kitchen table and found a loaded revolver (that belonged to Sotus) underneath Daly's body. Burke told police, "I didn't mean to. He threatened me with some nunchucks." Law enforcement found another gun lying on a bed in Burke's apartment.

Burke testified at trial[2] that he had no problem with Daly. Burke testified that on the night of Daly's death, he was in his own apartment when he heard a voice that he did not recognize yell from downstairs, "Hey, motherf***er, I know you're up there. You better come down or I'm coming to get your a**." When he went downstairs with his gun into the main level of the house, Burke testified, most of the lights were off and he saw only a hand holding nunchucks. Burke said he heard the person say, "Motherf***er, I'm going to kill you." He testified that he heard something like a chair or table move and thought the person was swinging the nunchucks at him, so he "threw up" his hands and "[t]he gun went off." Burke acknowledged taking that gun back up to his apartment before going to Anderson's apartment. He testified that he did not intend to shoot anyone and did not know the identity of the victim until Anderson told him it was Daly.

1. Although Burke does not challenge the sufficiency of the evidence, it is our customary practice in murder cases to review the record independently to determine whether the evidence was legally sufficient. Having done so, we

---

[2] Although Burke declined to testify at his first trial, he took the stand at the retrial.

conclude that the evidence was sufficient to authorize a rational trier of fact to find beyond a reasonable doubt that Burke was guilty of the crimes for which he was convicted. See Jackson v. Virginia, 443 U. S. 307, 319 (99 SCt 2781, 61 LE2d 560) (1979).

2. Burke argues that the trial court committed plain error by limiting the jury's consideration of voluntary manslaughter, such that it could find it a lesser included offense of only malice murder. We disagree.

The State requested a jury charge on voluntary manslaughter as a lesser included offense. Burke objected to the requested instruction, arguing that the State should not have charged him with malice murder and felony murder if it did not think it could convict him of those charges. The trial court agreed to give the voluntary manslaughter instruction, telling jurors:

> A person commits voluntary manslaughter when that person causes the death of another human being under circumstances that would otherwise be murder if that person acts solely as the result of a sudden, violent, and irresistible passion resulting from serious provocation sufficient to excite such passion in a reasonable person. If there should have been an interval between the provocation and the killing sufficient for the voice of reason and humanity to be heard, which the jury in all cases shall decide, the killing may be attributed to revenge and punished as for murder.

The court read that instruction after the malice murder charge but before the

5

felony murder and aggravated assault charges. The verdict form clearly limited the jury's consideration of manslaughter to the malice murder charge, giving the options of "Not Guilty," "Guilty," and "Guilty, of the Lesser Included Charge of Voluntary Manslaughter" under the malice murder count but listing only "Not Guilty" and "Guilty" options under the other counts. During deliberations, the jury asked, "Are voluntary manslaughter and aggravated assault/felony murder mutually exclusive?" The trial court responded, "[N]o. You should consider each count."

In his amended motion for new trial, Burke contended that the jury should have been able to consider whether the charged aggravated assault was provoked, thus mitigating the felony murder count to voluntary manslaughter. He also argued that the trial court's error in presenting the jury with a verdict form that precluded it from considering voluntary manslaughter as an alternative to the felony murder count exacerbated the trial court's erroneous jury instruction. The trial court rejected that argument, concluding that a voluntary manslaughter charge was not supported by the evidence — and thus should never have been given at all — and that the jury's rejection of voluntary manslaughter as an alternative to malice murder meant that it also would have

6

rejected that option if it had been given as an alternative to a felony murder conviction. Conceding that he did not object to the trial court's failure to instruct the jury that it also could consider voluntary manslaughter as a lesser charge to felony murder or to its predicate felony of aggravated assault, Burke argues on appeal that we nonetheless should grant him a new trial because the trial court's instructions amounted to plain error.

"[A] failure to charge amounts to plain error only to the extent that the failure to charge was erroneous, the error was obvious, the failure to charge likely affected the outcome of the proceedings, and the error seriously affected the fairness, integrity, or public reputation of judicial proceedings." Shaw v. State, 292 Ga. 871, 873 (2) (742 SE2d 707) (2013) (citation and punctuation omitted). Burke cites our case law to the effect that it may in some circumstances be error to fail to instruct a jury to consider evidence of provocation before finding a defendant guilty of felony murder. Specifically, he cites Edge v. State, 261 Ga. 865 (414 SE2d 463) (1992), in which we reversed a felony murder conviction where the jury also found the defendant guilty of voluntary manslaughter based on the same aggravated assault. Id. at 867 (2). We also said in dicta that when (1) an aggravated assault is perpetrated against the

7

homicide victim "and is an integral part of the killing" and (2) the evidence authorizes a voluntary manslaughter charge, "the jury should be admonished that if it finds provocation and passion with respect to the act which caused the killing, it could not find felony murder, but would be authorized to find voluntary manslaughter." Id. at 867 (2) n. 3. But regardless of the continued validity of our dicta in Edge,[3] it is clear that Edge's admonitions about curtailing a jury's consideration of voluntary manslaughter apply only where there is evidence that would authorize a voluntary manslaughter charge. See id. at 866-867 (2); see also McGill v. State, 263 Ga. 81, 83 (3) (428 SE2d 341) (1993). "A voluntary manslaughter charge is required when there is slight evidence that the defendant acted 'solely as the result of a sudden, violent, and irresistible passion resulting from serious provocation sufficient to excite such passion in a reasonable person.'" Jones v. State, 301 Ga. 1,  5-6 (2) (799 SE2d 196) (2017) (quoting OCGA § 16-5-2 (a)); see also Merritt v. State, 292 Ga. 327, 331 (2)

---

[3] We since have clarified that the referenced instruction called for in Edge is not required and that, although a trial court must instruct the jury that it must consider whether passion or provocation mitigates the killing before making a decision on felony murder, there is no error in failing to charge that a finding of passion or provocation precludes a finding of guilt on felony murder. See Terry v. State, 291 Ga. 508, 510-511 (2) (b) (731 SE2d 669) (2012); see also Morgan v. State, 290 Ga. 788, 792-793 (2) (725 SE2d 255) (2012).

8

(737 SE2d 673) (2013). Considering the evidence presented at trial, we agree with the trial court's belated conclusion that no voluntary manslaughter instruction was warranted at all, so there was no error, let alone an obvious one.

Burke points to evidence that he was distraught and angry on the night of the shooting for various reasons, including the death of his ex-wife and his argument with Sotus, when Daly appeared and twice called him a "motherf***er" in his own home. But, "[a]s a matter of law, angry statements alone ordinarily do not amount to 'serious provocation' within the meaning of OCGA § 16-5-2 (a)." Merritt, 292 Ga. at 331 (2); see also Jones, 301 Ga. at 6-7 (2) (evidence that appellant appeared to exchange angry words with rival gang members prior to shooting did not support voluntary manslaughter instruction); Davidson v. State, 289 Ga. 194, 195-197 (2) (709 SE2d 814) (2011) (heated or angry statements by child victim's parents, such as, "you dead," and "I'm going to kill you," could not constitute provocation requiring voluntary manslaughter instruction; defendant testified that he fired not out of anger, but out of fear and to defend his and his mother's life); compare Davis v. State, 290 Ga. 421, 423-424 (2) (721 SE2d 886) (2012) (indicating that words alone may be sufficient to support voluntary manslaughter instruction where victim, who was married

to accused, recounted her adultery and taunted the accused with descriptions of her adulterous conduct).

Burke also argues that the uncertainty regarding the reason for Daly's visit the night of his death, as well as uncertainty regarding the origin of the nunchucks and other firearm, would have supported a voluntary manslaughter charge. But acting out of fear of bodily harm is not the same as acting in the heat of passion, and only evidence of the latter supports a voluntary manslaughter conviction. See Dugger v. State, 297 Ga. 120, 123-124 (7) (772 SE2d 695) (2015) (fear of weapons or fighting is not the type of provocation demanding a voluntary manslaughter instruction); Smith v. State, 296 Ga. 731, 737-738 (3) (770 SE2d 610) (2015) (no error in refusing to give voluntary manslaughter instruction given lack of evidence defendant was subjected to any conduct that would excite the passions of a reasonable person); Baugh v. State, 293 Ga. 52, 55 (3) (743 SE2d 407) (2013) (no error in denying voluntary manslaughter instruction where defendant claimed he was scared by the victim firing a gun in his direction); Funes v. State, 289 Ga. 793, 795 (2) (716 SE2d 183) (2011) (evidence did not support a voluntary manslaughter instruction where defendant testified that he fired gun out of fear); Bell v. State, 280 Ga. 562, 566-567 (5)

10

(a) (629 SE2d 213) (2006) (voluntary manslaughter instruction unwarranted where evidence at best showed that defendant was trying to repel an attack, not that he acted in anger). For these reasons, there was no error in the trial court's failure to instruct the jury that it might consider voluntary manslaughter as an alternative to felony murder.

Burke contends that the trial court's conclusion (in rejecting his motion for new trial) that a voluntary manslaughter instruction was not warranted at all was unfair given that the State had asked for the instruction and the trial court in giving the charge had agreed with the State that the evidence was sufficient to support such a charge. We find this argument unavailing. Even if the State were somehow estopped from arguing that an instruction that the State itself requested was not warranted, we can reverse Burke's conviction under plain error review only if the alleged errors in the trial court's instructions "likely affected the outcome of the proceedings[.]" Shaw, 292 Ga. at 873 (2) (citation and punctuation omitted). Given there was no evidence to support a verdict that Burke was guilty of voluntary manslaughter, any error in the trial court's instructions that limited the jury's consideration of voluntary manslaughter could not have affected the outcome of the trial. See Fulcher v. State, 297 Ga.

11

733, 735 (2) (778 SE2d 159) (2015). We thus find that the trial court did not commit plain error in this regard.[4]

3. Burke raises as a separate enumeration of error the trial court's provision of a jury form that precluded the jury from considering voluntary manslaughter as an alternative to the felony murder count. Burke did not object to the verdict form and implicitly concedes that his claim of error regarding the form is subject to only plain error review. See Harvey v. State, 300 Ga. 598, 606 (8) (797 SE2d 75) (2017) (contention that verdict form was erroneous can be reviewed only for plain error where appellant did not object). As we explained in Division 2, there was no error in failing to give the jury the option to consider voluntary manslaughter as an alternative to felony murder, given there was no evidence to support such a charge. We therefore find no plain error in the aspect of the verdict form about which Burke complains.

Judgment affirmed. All the Justices concur.

---

[4] Given our conclusion under the plain error framework, we find it unnecessary to consider the State's argument that Burke affirmatively waived his argument by objecting to a voluntary manslaughter instruction being given at all.

Decided January 29, 2018.

Murder. DeKalb Superior Court. Before Judge Barrie.

Long D. Vo, for appellant.

Sherry Boston, District Attorney, Anna G. Cross, Lenny I. Krick, Helen V. Peters, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Michael A. Oldham, Assistant Attorney General, for appellee.