306 Ga. 492
FINAL COPY

S19A0899. MORTON v. THE STATE.

MELTON, Chief Justice.

Following a jury trial, Quindarius Keshun Morton was convicted of murder and related offenses in connection with the shooting death of Reginald Bien-Amin.[1] Morton appeals, arguing that the evidence was insufficient to support his convictions, that the trial court erred in failing to charge the jury on voluntary

---

[1] On February 26, 2015, a Gwinnett County grand jury indicted Morton for felony murder predicated on aggravated assault (Count 1), aggravated assault (Count 2), felony murder predicated on possession of cocaine with intent to distribute (Count 3), possession of cocaine with intent to distribute (Count 4), and two counts of possession of a firearm during the commission of a crime (Counts 5 and 6). Morton was tried from April 11-15, 2017, and was found guilty of all charges. On May 23, 2017, the trial court sentenced Morton to life imprisonment for felony murder (Count 1) and two consecutive five-year sentences for the weapons charges (Counts 5 and 6) for a total sentence of life plus ten years in confinement. All remaining counts were merged for sentencing purposes, rulings which are not challenged on appeal. See *Dixon v. State*, 302 Ga. 691 (4) (808 SE2d 696) (2017).

Morton filed a motion for new trial on May 23, 2017, which he subsequently amended through new counsel on April 11, 2018 and June 22, 2018. Following a hearing, the trial court denied the motion as amended on September 24, 2018. Morton timely filed a notice of appeal; the appeal was docketed to the April 2019 term of this Court and was thereafter submitted for a decision on the briefs.

manslaughter and erred in admitting certain expert testimony, and that he was denied effective assistance of counsel. Finding no error, we affirm.

1. Morton claims that the evidence was insufficient to support his convictions because it was based upon the uncorroborated and "discredited" testimony of two alleged accomplices — Levi Brockman and Morgan Myers — and further alleges that the trial court erred by failing to exercise its discretion to grant a new trial pursuant to the general grounds set forth in OCGA §§ 5-5-20 and 5-5-21. We disagree.

When evaluating the sufficiency of evidence, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime[s] beyond a reasonable doubt." (Emphasis omitted.) *Jackson v. Virginia*, 443 U.S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

Viewing the evidence in this light, the record shows that, on January 1, 2015, Morton was contacted by his friend, Brockman, in order to arrange a drug transaction at the Ivy Reserve Apartments in Gwinnett County. Brockman and his girlfriend, Myers, picked Morton up in Myers' silver Nissan and then stopped at a gas station before heading to the apartment complex. After exiting the car at the gas station, Myers saw Morton carrying a fish food bottle. When Morton returned to the car, he sat in the back seat by himself. When the group arrived at the apartment complex, Myers drove to the back and parked in a spot near some tennis courts. At this time, Morton took out a handgun and cocked it "for just in case." Brockman later told officers that he had known Morton to carry a 9mm handgun.

Myers' two friends, "Kreg" and Bien-Amin, walked from the apartments toward the car. Myers exited the vehicle and hugged the two men. She remained outside of the vehicle to talk to Kreg while Bien-Amin continued toward the car. Brockman shouted out

3

of the window for Bien-Amin to sit in the back seat so he could buy drugs from Morton; instead, Bien-Amin, who was armed, took Myers' place in the driver's seat. Shortly thereafter, witnesses fled the scene as they heard gunshots and saw gunpowder smoke coming from the car.

When officers responded, they found Myers' car backed into a spot in the parking lot; the driver's side door and the rear passenger door of the car were both ajar. Bien-Amin was slumped over in the driver's seat; he had a single-action revolver lying in his lap, he was covered in blood, and he did not have a pulse. The revolver had six rounds in the chamber and the hammer was not cocked. Officers processed the weapon and found no prints on the gun. The medical examiner later determined that the victim had died from multiple gunshot wounds to the head and torso, and further noted that one of the gunshot wounds had evidence of stippling, indicating that the victim was shot at close range.

During their search of the car, officers located, among other things, several projectiles as well as six 9mm shell casings. In the rear passenger's side door pocket, officers found an empty fish food bottle; residue inside the bottle tested positive for cocaine. A digital scale was located in the seat-back pocket of the front passenger's seat and a brown leather gun holster was found on the rear driver's side seat. Based upon the trajectory of the bullets, the crime scene investigator concluded that all of the shots had come from the back seat of the car "from a top down angle."

Officers canvassed the scene and located Brockman and Myers on the other side of a chain-link fence that surrounded the parking lot. They were taken to the police department where, at some point, officers placed the pair together in a room and left them alone. During this time, Brockman told Myers, "I don't know why the hell it happened, like why it went down like it did." He also told Myers that, prior to the shooting, there was no physical confrontation between himself and Bien-Amin. Officers returned to the scene the

5

next day and traced Brockman's flight path. Near the chain-link fence they discovered a small bag of cocaine and a winter cap. Officers spoke with Brockman a second time, during which he identified Morton as the shooter.

During his interview with investigators, Morton admitted that he was in the back seat of the car at the time of the shooting, that he had drugs in the car, and that, when Bien-Amin entered the vehicle, Morton did not make himself known to the victim. Morton testified at trial, however, that he fired his weapon in self-defense after Bien-Amin pulled a gun and demanded that "[n]obody move."

Turning to Morton's claim of uncorroborated accomplice testimony, even if we were to assume that Brockman and Myers were accomplices to Morton's crimes, their testimony was sufficiently corroborated by the physical evidence collected at the crime scene, by Morton's own testimony, and by the fact that each accomplice corroborated the testimony of the other. See *Yarn v. State*, 305 Ga. 421 (2) (826 SE2d 1) (2019) (discussing corroboration

6

of accomplice testimony under the new Evidence Code); *Huff v. State*, 300 Ga. 807, 809 (1) (796 SE2d 688) (2017) ("The testimony of one accomplice may corroborate that of another." (Citation omitted)).

Regarding Morton's claims that Brockman and Myers were not credible witnesses, it is well settled that "[t]his Court does not reweigh evidence or resolve conflicts in testimony; instead, evidence is reviewed in a light most favorable to the verdict, with deference to the jury's assessment of the weight and credibility of the evidence." (Citation and punctuation omitted.) *Hayes v. State*, 292 Ga. 506, 506 (739 SE2d 313) (2013). "Likewise, the issues of witness credibility and justification are for the jury to decide, and the jury is free to reject a defendant's claim that he acted in self-defense." (Citation and punctuation omitted.) *Shaw v. State*, 292 Ga. 871, 872 (1) (742 SE2d 707) (2013).

Based on the foregoing, we conclude that the evidence was sufficient to enable a rational trier of fact to conclude beyond a

reasonable doubt that Morton was guilty of the crimes for which he was convicted.

Morton also contends that the trial court failed to exercise its discretion to grant a new trial pursuant to the general grounds set forth in OCGA §§ 5-5-20 and 5-5-21, and asserts that this Court should grant a new trial for those reasons. "A motion for new trial on these grounds, however, is not properly addressed to this Court as such a decision is one that is solely within the discretion of the trial court." (Citation omitted.) *Smith v. State*, 300 Ga. 532, 534 (796 SE2d 671) (2017). See also *Henderson v. State*, 304 Ga. 733 (2) (822 SE2d 228) (2018). We further disagree with Morton's claim that the trial court failed to properly exercise its discretion as the thirteenth juror. Here, the trial court found that Morton was not entitled to a new trial on the general grounds, expressly stating that "[t]he Court has exercised its jurisdiction to sit as the thirteenth juror and finds that the weight of the evidence does not preponderate against the verdict," and that "the verdict was not contrary to the principles of

8

justice and equity." "The trial court having exercised its discretion as the thirteenth juror, and this Court having found the evidence was sufficient to support the verdict, we find no abuse of discretion in its denying the motion for new trial." *Smith*, 300 Ga. at 534.

2. During the charge conference, Morton requested the trial court instruct the jury on voluntary manslaughter. The trial court denied the request, and counsel did not object to this ruling. Morton concedes that, because counsel did not object below, this issue may be reviewed only for plain error, see OCGA § 17-8-58 (b), meaning that we may reverse only "if the instructional error was not affirmatively waived by the defendant, was obvious beyond reasonable dispute, likely affected the outcome of the proceedings, and seriously affected the fairness, integrity, or public reputation of judicial proceedings." (Citation and punctuation omitted.) *Woodard v. State*, 296 Ga. 803, 806 (2) (771 SE2d 362) (2015). See also *State v. Kelly*, 290 Ga. 29 (2) (a) (718 SE2d 232) (2011).

9

Morton has failed to demonstrate error, let alone plain error, as there was no evidence that he caused Bien-Amin's death "as the result of a sudden, violent, and irresistible passion resulting from serious provocation sufficient to excite such passion in a reasonable person[.]" OCGA § 16-5-2 (a). See also *Hicks v. State*, 287 Ga. 260, 262 (2) (695 SE2d 195) (2010) ("To authorize a requested jury instruction, there need only be slight evidence supporting the theory of the charge." (Citation omitted.)). As this Court has previously explained,

> [t]he provocation necessary to support a charge of voluntary manslaughter is markedly different from that which will support a self-defense claim. The distinguishing characteristic between the two claims is whether the accused was so influenced and excited that he reacted passionately rather than simply in an attempt to defend himself. Only where this is shown will a charge on voluntary manslaughter be warranted.

(Citations and punctuation omitted.) *Pulley v. State*, 291 Ga. 330, 334-335 (4) (729 SE2d 338) (2012). Here, the record is devoid of any evidence that the shooting was the result of a sudden, violent, and

10

irresistible passion. Indeed, Morton testified that he shot Bien-Amin because he was scared and felt he needed to protect himself. See *Davidson v. State*, 289 Ga. 194, 196 (2) (709 SE2d 814) (2011) ("A charge on voluntary manslaughter is not available to a defendant whose own statement unequivocally shows that he was not angered or impassioned when a killing occurred, and when the other evidence does not show otherwise." (Citation and punctuation omitted.)). See also *Browning v. State*, 283 Ga. 528 (2) (a) (661 SE2d 552) (2008) (charge on voluntary manslaughter not authorized when defendant testified that he was scared and protecting himself when he shot the victim). As there was no evidence to support a charge on voluntary manslaughter, the trial court did not err in refusing to give the same.

3. Next, Morton claims that the trial court erred in admitting certain expert witness testimony into evidence. During the State's case-in-chief, the prosecutor tendered Sergeant Brandle as an expert in the "field of narcotics investigations and specifically, the activities

11

and operations and uses [of the drug trade], including the sale of drugs on the street." While on direct examination, the prosecutor asked Sergeant Brandle where Morton was sitting in the vehicle, and had him confirm that the fish food bottle and the digital scale were located in the back of the car. Thereafter, the following exchange occurred:

> PROSECUTOR: Okay. It is fair to say that [the fish food bottle and digital scale] were centered around this Defendant in this case?
> BRANDLE: Yes, ma'am.
> PROSECUTOR: Okay. And what does that indicate to you, if anything?
> BRANDLE: That would tell me that that was the person that had the – was in control of the drugs, the person that was going to be selling the actual drugs.

Morton contends that Sergeant Brandle's testimony improperly invaded the province of the jury as to Morton's drug charges in violation of OCGA § 24-7-704 (b),[2] and also contends that Sergeant

---

[2] No expert witness testifying with respect to the mental state or condition of an accused in a criminal proceeding shall state an opinion or inference as to whether the accused did or did not have the mental state

Brandle testified to matters not outside the ken of the jury. Because Morton did not raise these specific objections in the trial court below, his claim may be reviewed only for plain error. See *Gates v. State*, 298 Ga. 324 (3) (781 SE2d 772) (2016) (holding that the *Kelly* plain error test for alleged instructional errors also applies to evidentiary errors under OCGA 24-1-103 (d)). We find no plain error.

With regard to Morton's OCGA § 24-7-704 (b) claim, and pretermitting the question of whether Sergeant Brandle actually opined as to Morton's mental state on the drug charges, Morton cannot show plain error. Indeed, in light of Morton's pre-trial statements admitted into evidence acknowledging that he had drugs in the car, and the testimony from other witnesses that Morton was in the car specifically for a drug deal, Morton has failed to "make an affirmative showing that the error probably did affect the outcome below." (Citations and punctuation omitted.) *Shaw v. State*, 292 Ga.

---

or condition constituting an element of the crime charged or of a defense thereto. Such ultimate issues are matters for the trier of fact alone.

871, 873 (2) (742 SE2d 707) (2013). For the same reasons, Morton's allegation that Sergeant Brandle testified to information not outside the ken of the average juror also fails to meet the plain error standard.

4. Finally, Morton raises three claims of ineffective assistance of trial counsel and further alleges that the cumulative effect of trial counsel's errors substantially prejudiced his trial. In order to establish ineffective assistance, a defendant must show that his counsel's performance was professionally deficient and that, but for such deficient performance, there is a reasonable probability that the result of the trial would have been different. See *Strickland v. Washington*, 466 U. S. 668 (III) (104 SCt 2052, 80 LE2d 674) (1984). If the defendant fails to satisfy either prong of the *Strickland* test, this Court is not required to examine the other. See *Green v. State*, 291 Ga. 579 (731 SE2d 359) (2012). "A court considering a claim of ineffective assistance must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable

professional assistance." (Citation omitted.) *Harrington v. Richter*, 562 U. S. 86, 104 (IV) (131 SCt 770, 178 LE2d 624) (2011). Indeed, "[t]rial tactics and strategy . . . are almost never adequate grounds for finding trial counsel ineffective unless they are so patently unreasonable that no competent attorney would have chosen them." (Citation and punctuation omitted.) *McNair v. State*, 296 Ga. 181, 184 (2) (b) (766 SE2d 45) (2014). "In reviewing the trial court's decision, we accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts." (Citation and punctuation omitted.) *Wright v. State*, 291 Ga. 869, 870 (734 SE2d 876) (2012). With these principles in mind, we review Morton's alleged errors.

(a) *Pre-trial Preparation*

Morton contends that trial counsel was ineffective for failing to obtain and review all of the evidence in his case and adequately prepare for trial. In support of this argument, Morton relies upon a list of evidentiary items missing from counsel's post-trial case file,

including, but not limited to, recorded witness statements and supplemental police reports. While trial counsel acknowledged at the motion for new trial hearing that the file he sent to appellate counsel was incomplete, trial counsel testified that he had received and reviewed all discovery prior to trial. He further explained that, based upon the discovery provided, and the numerous pre-trial conversations he had with Morton, counsel devised a defense theory of mere presence on the drug charges and self-defense for the shooting. The trial court credited counsel's testimony in support of its determination that counsel was not deficient in his trial preparation. Giving the proper deference to the trial court's factual findings and credibility determinations, we agree that Morton has failed to show deficient performance under *Strickland*. See *Jones v. State*, 287 Ga. 270, 272 (695 SE2d 271) (2010) ("The trial court was authorized to credit the testimony of [appellant's trial] counsel, and its factual findings and credibility determinations will be accepted unless clearly erroneous.").

16

(b) *Witness Impeachment*

Morton further alleges that trial counsel failed to effectively cross-examine Brockman and Myers on their many inconsistent statements. At the motion for new trial hearing, trial counsel testified that he made a strategic decision to limit his impeachment of Brockman and Myers because their trial testimony was helpful to the defense, and because their inconsistent statements came out during their direct examinations.

The record shows that Brockman's and Myers' trial testimony was helpful to the defense. For instance, contrary to his pre-trial statements, Brockman testified on direct examination that Bien-Amin entered the vehicle, immediately pulled a weapon, and demanded that no one move. During her direct examination, Myers denied ever seeing Morton with the fish food bottle on the day of the crimes. On cross-examination, trial counsel elicited testimony that Myers had her back to the car when the shooting occurred and that Brockman had stolen money from the victim's friend.

17

Based on the foregoing, Morton has failed to show that counsel's strategic decision was unreasonable. See *Butler v. State*, 273 Ga. 380, 385 (10) (b) (541 SE2d 653) (2001) ("[A] matter such as the cross-examination of a witness is most often grounded in matters of trial tactics and strategy and, in those instances, provides no basis for finding counsel's performance deficient.").

(c) *Voluntary Manslaughter Charge*

Lastly, Morton alleges that trial counsel was ineffective for failing to object to the trial court's decision not to charge the jury on voluntary manslaughter. However, for the reasons discussed in Division 2, supra, Morton has failed to show either deficient performance or prejudice, because any objection to the trial court's ruling would have been meritless. See *Browning*, 283 Ga. at 530-531 ("Because a jury instruction on voluntary manslaughter was not warranted, any failure on the part of [the defendant's] trial counsel to request and/or pursue its being given cannot constitute the deficient performance necessary to satisfy the first prong of the

18

ineffective assistance of counsel test.").  Accordingly, his claim fails.

(d) *Cumulative Effect*

Finally, Morton argues that the cumulative effect of counsel's alleged errors prejudiced the outcome of his trial.  When reviewing such a claim, we "evaluate only the effects of matters determined to be error, not the cumulative effect of non-errors."  (Citation and punctuation omitted.) *Bulloch v. State*, 293 Ga. 179, 183 (2) (744 SE2d 763) (2013).  Because Morton has failed to show deficiency on any of his allegations of ineffective assistance, his cumulative effect assertion has no merit.  See *Chapman v. State*, 290 Ga. 631 (2) (e) (724 SE2d 391) (2012).

*Judgment affirmed.  All the Justices concur.*

DECIDED AUGUST 5, 2019.

Murder. Gwinnett Superior Court. Before Judge Rich.
*Dawn H. Taylor*, for appellant.
*Daniel J. Porter, District Attorney, Samuel R. d'Entremont, Assistant District Attorney; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Meghan H. Hill, Assistant Attorney General*, for appellee.