312 Ga. 258
FINAL COPY

S21A0865. HINTON v. THE STATE.

NAHMIAS, Chief Justice.

Appellant Lamontez Hinton was convicted of malice murder and other crimes related to the shooting death of Kilon Williams and the armed robbery of Williams's friend Nicholas Gibson. Appellant contends that the evidence presented at his trial was legally insufficient to support his convictions and that the trial court should have granted him a new trial under the "thirteenth juror" standard. Those contentions have no merit, so we affirm Appellant's convictions except for his conviction for the aggravated assault of Gibson, which we vacate because it should have been merged into Appellant's conviction for the armed robbery of Gibson.[1]

---

[1] Williams was killed on July 3, 2014. On January 2, 2015, a Fulton County grand jury indicted Appellant and Fernando Hogan for malice murder, two counts of felony murder (based on possession of a firearm by a convicted felon and aggravated assault), armed robbery of Gibson, aggravated assault of Williams, aggravated assault of Gibson, conspiracy to commit armed robbery

1. (a) In the unsuccessful appeal of Appellant's co-defendant, Fernando Hogan, we summarized the evidence presented at their joint trial as follows:

> Viewed in the light most favorable to the jury's verdicts, the evidence presented at [the] trial showed that, in the early morning hours of July 3, 2014, Williams and Gibson, who were going to a bar, parked their car on a side street near Ponce de Leon Avenue in Atlanta. Gibson began to walk to the bar, while Williams remained in the car to text someone. After Gibson had walked for about two minutes, he saw a man standing on the street apparently directing someone who was trying to park his car. But the parking job was a ruse, and the man who appeared to be directing the car pulled a gun on Gibson and told him to strip down to his underwear. Gibson did so, leaving his wallet, watch, glasses, cell phone, and clothes on the ground. The driver then got out of the car

---

of Gibson, possession of a firearm by a convicted felon, and possession of a firearm during the commission of a felony. Appellant and Hogan's joint trial began on September 26, 2016, and on October 4, the jury found Appellant guilty of all counts and Hogan not guilty of malice murder but guilty of the remaining charges. The trial court sentenced Appellant to serve life in prison for malice murder; 20 consecutive years for armed robbery; 20 years for the aggravated assault of Gibson and five years for firearm possession by a convicted felon, both concurrent with the armed robbery sentence; and five years for the possession of a firearm during the commission of a felony, consecutive to the armed robbery sentence. The remaining counts were vacated or merged. As discussed in Division 2 below, the aggravated assault count related to Gibson also should have been merged. Appellant filed a timely motion for new trial, which the trial court denied in August 2018. He then filed a timely notice of appeal, and the case was docketed to this Court for the April 2021 term and submitted for a decision on the briefs.

and picked up the items. The armed man told Gibson to run, and Gibson began to walk away quickly. The armed man then got into the car, and the occupants of the car drove to where Williams was parked. The armed man jumped out of the car, shot Williams several times, [killing him], and got back into the car. The occupants of the car then sped off.

At trial, Gibson identified the driver as Hogan and the armed man as . . . [Appellant]. Evidence was introduced that, after Gibson's phone was stolen, multiple calls were placed to a phone number belonging to Hogan's cousin, Lanquesha Washington. The evidence showed that on the morning of July 3, Hogan called Washington from a phone number that Washington did not recognize. Hogan, sounding scared, told her that he and [Appellant] had been in an altercation, saying that they had robbed someone or had been the victims of a robbery. According to Washington, Hogan added that a shooting had occurred and that he thought someone might have died. Later in the day on July 3, Washington went to her mother's house, where Hogan lived, and talked with Hogan there. Washington saw Hogan with a black wallet that did not belong to him and overheard Hogan on the phone sounding as though he was trying to transfer money from different cards or accounts. Hogan later texted Washington, saying that he thought someone might have died, and later told her that he was watching the news and saw reports of the incident.

*Hogan v. State*, 308 Ga. 155, 156 (839 SE2d 651) (2020).

The following trial evidence is also pertinent to this appeal.

After seeing Appellant shoot Williams, Gibson unsuccessfully tried

3

to flag down a passing driver to help Williams; the driver testified about being stopped by a man wearing only underwear and socks. Gibson, who had recently been released on parole related to his conviction for a bank robbery, then got scared and fled on foot to his aunt's house a few miles away; he told her that Williams had been shot. Gibson did not call 911, but the following day, he met with a detective to discuss the incident. Gibson told the detective that the two assailants were driving a blue Dodge Avenger. The detective showed Gibson a photographic lineup containing 22 photos (none of Appellant or Hogan), and Gibson identified a man named DeShawn Willis as the gunman. Gibson testified at trial that he was not sure about the identification, however, because Willis had a similar facial shape to the gunman, but a different hairstyle.

After reviewing records for Gibson's stolen cell phone, discovering that it had been used in the area where Hogan had met Washington at her mother's house — which was next door to Appellant's grandmother's house — and speaking with Washington

and with Appellant's girlfriend Tiffany Combs, the detective suspected Appellant and Hogan of committing the crimes. On October 8, 2014, the detective showed Gibson two photographic lineups, one including Appellant's photo and the other including Hogan's photo. Gibson identified Appellant as the person who robbed him and shot Williams and identified Hogan as the driver. Gibson testified at trial that he was "positive" about those identifications.

In a redacted version of Combs's audio-recorded statement to the detective that was played at trial, Combs acknowledged that she owned a blue Dodge Avenger and said that Appellant had taken the car on the night of the shooting, after telling her that he and Hogan were "going to be getting into something." Combs also said that Appellant had previously told her that he robs people by acting like he is going to shoot them and making them strip out of their clothes. The State presented evidence that Appellant was previously convicted of burglary. Neither Appellant nor Hogan testified at trial.

5

(b) Appellant contends that the evidence presented at his trial was legally insufficient to support his convictions because Gibson's identification of him as the gunman was not credible. Appellant points to evidence that Gibson was a paroled bank robber who fled the scene of the shooting, did not immediately call 911, and initially identified someone other than Appellant as the gunman. All of that is true, but in evaluating the sufficiency of the evidence under the constitutional due process standard set forth in *Jackson v. Virginia*, 443 U.S. 307, 319 (99 SCt 2781, 61 LE2d 560) (1979), "'[w]e do not determine the credibility of eyewitness identification testimony. Rather[,] the determination of a witness'[s] credibility, including the accuracy of eyewitness identification, is within the exclusive province of the jury.'" *Reeves v. State*, 288 Ga. 545, 546 (705 SE2d 159) (2011) (citation and punctuation omitted). And "[t]he testimony of a single witness is generally sufficient to establish a fact." OCGA § 24-14-8.

Gibson explained to the jury at trial that he was unsure about

6

his initial pretrial identification but "positive" about his identification of Appellant as the gunman and Hogan as the driver in the subsequent photo lineups. Gibson also identified Appellant in court as the gunman, and his testimony was corroborated by, among other things, Combs's statement to the detective and Hogan's statement to his cousin Washington. The jury was entitled to credit Gibson's identification of Appellant and to rely on that testimony as well as the other evidence of Appellant's guilt. See *Vega v. State*, 285 Ga. 32, 33 (673 SE2d 223) (2009) ("'It was for the jury to determine the credibility of the witnesses and to resolve any conflicts or inconsistencies in the evidence.'" (citation omitted)). When properly viewed in the light most favorable to the verdicts, the evidence presented at trial was sufficient to authorize a rational jury to find Appellant guilty beyond a reasonable doubt of the crimes of which he was convicted. See *Jackson*, 443 U.S. at 319.

(c) Appellant also argues that the trial court should have granted a new trial under the "thirteenth juror" standard. We have

7

explained that

> [e]ven when the evidence is legally sufficient to sustain a
> conviction, a trial judge may grant a new trial if the
> verdict of the jury is "contrary to . . . the principles of
> justice and equity," OCGA § 5-5-20, or if the verdict is
> "decidedly and strongly against the weight of the
> evidence." OCGA § 5-5-21. When properly raised in a
> timely motion, these grounds for a new trial — commonly
> known as the "general grounds" — require the trial judge
> to exercise a "broad discretion to sit as a 'thirteenth
> juror.'" In exercising that discretion, the trial judge must
> consider some of the things that [he] cannot when
> assessing the legal sufficiency of the evidence, including
> any conflicts in the evidence, the credibility of witnesses,
> and the weight of the evidence.

*White v. State*, 293 Ga. 523, 524-525 (753 SE2d 115) (2013) (citation

omitted). "'[T]he decision to grant or refuse to grant a new trial on

the general grounds is vested solely in the trial court.'" *Thrift v.*

*State*, 310 Ga. 499, 503 (852 SE2d 560) (2020) (citation omitted).

Thus,

> "[w]hen a defendant appeals the trial court's denial of a
> motion for new trial, an *appellate* court does not review
> the merits of the general grounds." Instead, this Court's
> review of [the] trial court's ruling on the general grounds
> is limited to sufficiency of the evidence under *Jackson v.*
> *Virginia*.

8

*Thrift*, 310 Ga. at 503 (citations omitted; emphasis in original).

As Appellant acknowledges, the trial court applied the correct "thirteenth juror" standard. Compare *White*, 293 Ga. at 525. And as discussed in the previous subdivision, the evidence was sufficient to support Appellant's convictions under *Jackson v. Virginia*. Accordingly, this enumeration of error is meritless.

2. Although Appellant's claims have no merit, the State forthrightly points out that the record shows a sentencing error. Because the aggravated assault of Gibson by pointing a gun at him (Count 6) was part of the same transaction as the armed robbery of Gibson (Count 4), the trial court should have merged Count 6 into Count 4. See *Thomas v. State*, 289 Ga. 877, 880 (717 SE2d 187) (2011) ("Because aggravated assault [with a deadly weapon] does not require proof of any element that armed robbery does not, convictions for both offenses will merge . . . if the crimes are part of the same 'act or transaction.'" (citation omitted)). Accordingly, we vacate Appellant's conviction and 20-year concurrent sentence for

9

Count 6 as we did in Hogan's case. See *Hogan*, 308 Ga. at 155 n.1.

*Judgment affirmed in part and vacated in part. All the Justices concur, except Colvin, J., not participating.*

Decided August 10, 2021.

Murder. Fulton Superior Court. Before Judge McBurney.

*Nicholas E. White; J. Timothy Lewis*, for appellant.

*Fani T. Willis, District Attorney, Lyndsey H. Rudder, Elizabeth Rosenwasser, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Matthew B. Crowder, Assistant Attorney General*, for appellee.