316 Ga. 264
FINAL COPY

S23A0034.  O'NEAL v. THE STATE.

ELLINGTON, Justice.

Ryan O'Neal was convicted of malice murder, possession of a firearm during the commission of a felony, and other related crimes in connection with the shooting death of Joseph Jackson.[1] On appeal,

---

[1] The crimes occurred on July 16, 2019. O'Neal was indicted by an Oconee County grand jury in 2019 for charges related to the shooting death of Jackson. That indictment was superseded when, on March 10, 2021, the Oconee County grand jury issued a new indictment charging O'Neal, Akhemu Dunston, and Dallas McCabe with malice murder (Count 1), felony murder (Counts 2, 3, and 4), criminal attempt to commit robbery by force (Count 5), criminal attempt to commit a violation of the Georgia Controlled Substances Act (Count 6), and aggravated assault with a deadly weapon (Count 7). O'Neal was solely charged in the same indictment for possession of a firearm during the commission of a felony (Count 8). By agreement of the parties, O'Neal was tried separately from Dunston and McCabe. In April 2021, a jury found O'Neal guilty of malice murder, one count of felony murder (Count 4), aggravated assault with a deadly weapon, and possession of a firearm during the commission of a felony. The jury found him not guilty of the other charges. On April 1, 2021, the trial court sentenced O'Neal to serve life in prison for malice murder and a consecutive five-year sentence for the firearm offense. Because the jury found O'Neal guilty of malice murder, the felony murder charge was vacated by operation of law, see *Malcolm v. State*, 263 Ga. 369, 371-372 (4) (434 SE2d 479) (1993), and the aggravated assault charge that formed the predicate for the felony murder charge merged into the malice murder conviction as a matter of fact for sentencing purposes. O'Neal filed a timely motion for a new trial on

O'Neal contends that the evidence was insufficient to support his murder conviction, the trial court erred by instructing the jury on conspiracy and denying his request for an instruction on voluntary manslaughter, and defense counsel provided ineffective assistance by failing to object to a comment made by the prosecutor during closing argument and failing to successfully defend against the State's request for a conspiracy instruction. He also asserts his trial was fundamentally unfair because of the number of errors made by the trial court. We conclude that the evidence was sufficient to sustain O'Neal's murder conviction; the trial court did not err by instructing the jury on conspiracy because there was some evidence to support the giving of that charge; the trial court did not err by denying O'Neal's request for a charge on voluntary manslaughter because there was no evidence of provocation; O'Neal failed to demonstrate that his trial counsel was deficient; and because there

April 12, 2021. Following a May 4, 2022 hearing, the trial court denied the motion for a new trial, and O'Neal filed a timely notice of appeal. The case was docketed in this Court to the term beginning in December 2022 and submitted for a decision on the briefs.

is no merit in the errors alleged, O'Neal's trial was not fundamentally unfair.

Viewed in the light most favorable to the verdicts, the evidence presented at trial showed the following. On the day of the crimes, Jackson, who lived with his grandparents, contacted Akhemu Dunston and arranged via text to purchase marijuana. After messaging with Jackson, Akhemu contacted Dallas McCabe via text about participating in a robbery. O'Neal, Akhemu, Akhemu's brother Quentin Dunston, and McCabe drove to Jackson's neighborhood that evening to deliver the marijuana. During the drug transaction, Akhemu, who was seated in the front passenger seat next to the driver, McCabe, asked to borrow Jackson's phone. When Akhemu refused to return the phone, Jackson leaned into the vehicle in an attempt to retrieve the phone, and McCabe drove away, dragging Jackson along the road as he did so. As Jackson and Akhemu struggled over the phone, O'Neal, who was sitting behind Akhemu, fatally shot Jackson in the chest, shattering the rear passenger-side window and causing Jackson to fall to the ground.

3

Just before midnight, Jackson's grandparents found him bloodied but still alive outside their door. Jackson died the next morning.

Investigators searching near Jackson's home after the shooting found blood, shattered glass, and Jackson's shirt and cell phone approximately 100 yards from his house. Investigators ultimately learned that just before he was shot, Jackson arranged to meet with Akhemu at the end of Jackson's driveway. Akhemu was detained by police on a separate warrant, and after speaking with investigators, he was arrested and charged with Jackson's murder.

Following Akhemu's arrest, investigators spoke with Quentin, who admitted that he was in the car with O'Neal, Akhemu, and McCabe when Jackson was shot. Quentin stated that he, O'Neal, and the other men in the car stopped at Jackson's house to sell Jackson marijuana, and while there, Akhemu asked to use Jackson's phone and refused to give it back. He said that as Jackson was holding onto the car trying to get his phone, O'Neal took a gun from his bag and shot Jackson. Quentin stated that after the shooting, when he suggested they go to the police, O'Neal cocked the gun and

4

pointed it at Quentin.[2]

O'Neal was arrested a few weeks after the shooting as he hid in a closet in an apartment in Athens, Georgia. In the same closet, police discovered a 9mm handgun, ammunition, and a black fanny pack. In his first statement to police, O'Neal admitted he was with Akhemu and Quentin in the car driven by McCabe and that Jackson was shot during an altercation between Jackson and Akhemu when the 9mm handgun in the fanny pack O'Neal was wearing accidentally discharged. He also told investigators that he and the other occupants of the car were "scared" when Jackson tried to get his phone back. In a subsequent statement to police, O'Neal told investigators that McCabe shot Jackson, and as McCabe drove away, the gun fell into the back seat and into O'Neal's fanny pack.

An examination of O'Neal's cell phone and social media records

---

[2] Quentin was originally charged with Jackson's murder, but the charges were dismissed because the State concluded there was insufficient evidence to show Quentin was a party to the crimes. After Quentin told prosecutors he would invoke his Fifth Amendment privileges if called to testify at O'Neal's trial, Quentin was granted immunity. At trial, Quentin refused to admit Akhemu was trying to steal Jackson's phone, and he told the jury that McCabe, not O'Neal, shot Jackson.

showed that O'Neal's phone communicated with Akhemu's and Quentin's phones before and after the shooting and communicated with Akhemu's phone multiple times after Akhemu set up the meeting with Jackson. Phone records also showed that O'Neal's phone called McCabe's phone several times after the shooting, when, according to Quentin, Akhemu asked O'Neal to warn McCabe not to drive his car because police were looking for a car with a broken window. McCabe was arrested in Texas after his vehicle was photographed by a license plate reader. The photo from the license plate reader showed the rear-passenger window of McCabe's car covered with plastic.

The medical examiner testified that Jackson suffered from abrasions over most of his body consistent with "road rash" and died as the result of a single gunshot wound to his left arm and chest. A GBI forensic firearms expert testified that the gun found in O'Neal's possession was the same gun used to shoot Jackson; the gun was in good, working order and required 7.25 pounds of pressure to pull the trigger; and the gun was not fired from inside the fanny pack.

6

1. O'Neal asserts that the evidence presented at trial was not sufficient to support his murder conviction. When evaluating the sufficiency of the evidence as a matter of federal constitutional due process, we view the evidence presented at trial in the light most favorable to the prosecution and consider whether it was sufficient to authorize a rational trier of fact to find the defendant guilty beyond a reasonable doubt of the crimes of which he was convicted. See *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979); *Moore v. State*, 311 Ga. 506, 508 (2) (858 SE2d 676) (2021). "This Court does not reweigh evidence or resolve conflicts in testimony; instead, evidence is reviewed in a light most favorable to the verdict, with deference to the jury's assessment of the weight and credibility of the evidence." (Citation and punctuation omitted.) *Hayes v. State*, 292 Ga. 506, 506 (739 SE2d 313) (2013).

(a) O'Neal first contends that the State failed to prove that he killed Jackson with malice aforethought or an intent to kill. "A person commits the offense of murder when he unlawfully and with

7

malice aforethought, either express or implied, causes the death of another human being." OCGA § 16-5-1 (a). "The State, of course, must prove malice beyond a reasonable doubt to convict someone of malice murder." *Benson v. State*, 294 Ga. 618, 620 (1) (754 SE2d 23) (2014). "Express malice is that deliberate intention unlawfully to take the life of another human being which is manifested by external circumstances capable of proof." OCGA § 16-5-1 (b). Malice may also be implied "where no considerable provocation appears and where all the circumstances of the killing show [the defendant acted with] an abandoned and malignant heart." Id. The malice necessary to establish malice murder, be it express or implied, may be formed in an instant, as long as it is present at the time of the killing. See *Platt v. State*, 291 Ga. 631, 633 (732 SE2d 75) (2012). "It is for a jury to determine from all the facts and circumstances whether a killing is intentional and malicious." *White v. State*, 287 Ga. 713, 715 (1) (b) (699 SE2d 291) (2010).

Here, the jury heard evidence authorizing it to conclude that O'Neal planned with others to rob Jackson during a drug transaction

and fatally shot Jackson and left him lying on the side of the road. O'Neal then pointed a gun at Quentin when Quentin suggested they go to the police and warned McCabe not to drive his car because police were looking for a car with a broken window. O'Neal, meanwhile, avoided arrest until a few weeks after the shooting, when he was discovered hiding in a closet with the gun used to shoot Jackson in his possession. O'Neal initially told investigators that the gun accidentally discharged from inside his fanny pack, a claim not supported by the physical evidence, and at trial, he argued that someone else shot Jackson. Based on all of the foregoing evidence, we conclude that the evidence was sufficient to enable the jury to find beyond a reasonable doubt that O'Neal was guilty of Jackson's murder. See *Dupree v. State*, 303 Ga. 885, 887 (1) (815 SE2d 899) (2018) (evidence of malice murder was sufficient where the defendant physically assaulted victim before her death and left her to die); see also *Rowland v. State*, 306 Ga. 59, 65 (3) n.4 (829 SE2d 81) (2019) (Evidence of flight and related conduct is "admissible as evidence of consciousness of guilt, and thus of guilt itself." (citation

9

and punctuation omitted)).

(b) O'Neal also argues that the evidence was insufficient to support his murder conviction because Quentin's testimony was unreliable. Any questions about the reliability of Quentin's statements to investigators or testimony at trial, however, were for the jury to decide. See *Smith v. State*, 308 Ga. 81, 84 (1) (839 SE2d 630) (2020) ("We leave to the jury the resolution of conflicts or inconsistencies in the evidence, credibility of witnesses, and reasonable inferences to be derived from the facts.").

2. In another challenge to the sufficiency of the evidence, O'Neal asserts that the trial court abused its discretion when it rejected his request for a new trial on the grounds that the jury's verdict was contrary to the law or evidence and strongly against the weight of the evidence. See OCGA §§ 5-5-20 (authorizing a trial judge to grant a defendant a new trial if it concludes the verdict of the jury is "contrary to . . . the principles of justice and equity") and 5-5-21 (authorizing a trial judge to grant a defendant a new trial if it concludes the verdict of the jury is "decidedly and strongly against

the weight of the evidence"). These statutes, referred to as the general grounds, require a trial court to exercise a "broad discretion to sit as a 'thirteenth juror.'" *Hinton v. State*, 312 Ga. 258, 262 (1) (c) (862 SE2d 320) (2021) (citation and punctuation omitted). As an appellate court, however, we do not independently review the evidence as a thirteenth juror because the "decision to grant or refuse to grant a new trial on the general grounds is vested solely in the trial court." Id. at 262 (1) (c) (citation and punctuation omitted). And we "presume, in the absence of affirmative evidence to the contrary, that the trial court did properly exercise such discretion." *Wilson v. State*, 302 Ga. 106, 108 (II) (a) (805 SE2d 98) (2017). The trial court's order states that after reviewing the evidence, argument of counsel, pleadings, and filed transcripts, the trial court determined that the jury's verdict was not contrary to the law or evidence and was not strongly against the weight of the evidence presented at trial. Accordingly, the record demonstrates that the trial court properly exercised its discretion as the thirteenth juror and this claim fails. See *Smith v. State*, 300 Ga. 532, 534 (1) (796

SE2d 671) (2017) (Because "the evidence was sufficient to support the verdict," the trial court did not abuse its discretion as the "thirteenth juror" where, in its order denying the motion for new trial, "the trial court recited it had weighed the evidence, including the credibility of the witnesses, and found [the defendant] was not entitled to a new trial on the general grounds[.]").

3. O'Neal argues that the trial court erred by refusing to give a requested charge on voluntary manslaughter as a lesser offense of murder because the jury could have found that Jackson was shot as a result of a sudden, irresistible passion caused by Jackson's efforts to retrieve his phone.

Voluntary manslaughter is the killing of another person under circumstances that would otherwise be murder when the killer "acts solely as the result of a sudden, violent, and irresistible passion resulting from serious provocation sufficient to excite such passion in a reasonable person[.]" OCGA § 16-5-2 (a). A trial court is required to grant a defendant's request for a charge on voluntary manslaughter if there is any evidence, however slight, supporting

12

the theory of the charge. See *McClain v. State*, 303 Ga. 6, 9 (2) (810 SE2d 77) (2018). "It is a question of law for courts to determine whether the defendant has presented sufficient evidence to warrant a requested charge." *Hudson v. State*, 308 Ga. 443, 445 (2) (841 SE2d 696) (2020).

This claim fails, however, because there was not even slight evidence presented at trial of provocative conduct sufficient to warrant the giving of a voluntary manslaughter charge. Although there was some evidence that Jackson reached into the car to retrieve his phone before he was shot, a voluntary manslaughter charge is not warranted where the only evidence is that the victim was resisting an unlawful act. See *Nance v. State*, 272 Ga. 217, 221 (3) (526 SE2d 560) (2000) (Charge of voluntary manslaughter was not warranted where the only alleged evidence of provocation was that the victim resisted an armed robbery.); *Turpin v. Christenson*, 269 Ga. 226, 234 (12) (A) n.6 (497 SE2d 216) (1998) (Voluntary manslaughter charge was not warranted where the only evidence of provocation was a struggle between the victim and the defendant as

13

the victim attempted to resist an armed robbery.); see also *Johnson v. State*, 313 Ga. 698, 700 (873 SE2d 123) (2022) (The victim's physical resistance against a defendant's unlawful act "is not the type of provocation which demands a voluntary manslaughter charge." (citation and punctuation omitted)). Accordingly, the trial court did not err by refusing to give a charge on voluntary manslaughter.

4. O'Neal next argues that it was error for the trial court to instruct the jury on conspiracy because there was no evidence showing he was a knowing participant in the planning of either the drug transaction or the robbery.

As an initial matter, we note that the State did not charge O'Neal with conspiracy in the indictment. It is not error, however, for a trial court to instruct the jury on the subject of conspiracy when the evidence tends to show a conspiracy. See *Holmes v. State*, 272 Ga. 517, 519 (6) (529 SE2d 879) (2000). The State may prove a conspiracy by showing "that two or more persons tacitly came to a mutual understanding to . . . pursue a criminal objective." (Citation

14

and punctuation omitted.) *Brown v. State*, 269 Ga. 67, 69 (3) (495 SE2d 289) (1998). "Where there is no evidence of an express agreement, an inference that two or more people tacitly came to a mutual understanding to commit a crime can be drawn from the nature of the acts done, the relation of the parties, the interest of the alleged conspirators, and other circumstances." *Brown v. State*, 304 Ga. 435, 441 (3) (819 SE2d 14) (2018) (citation and punctuation omitted). And "[i]t is well established that presence, companionship and conduct [that discloses a common design] before and after the offense are circumstances which may give rise to the existence of a conspiracy." *Turner v. State*, 275 Ga. 343, 345 (2) (566 SE2d 676) (2002).

Here, the evidence was sufficient to support the inference that O'Neal and at least one of the other men in the car had a mutual, if only tacit, agreement to lure Jackson to meet with them under the guise of a drug transaction and then rob Jackson of his money and/or phone. In light of this evidence, it was not error for the trial court to charge the jury on conspiracy. See *Turner*, 275 Ga. at 345 (2)

15

(Evidence that the defendant and another man drove the victim to the scene of the crimes and were together in the hours after the crimes and the other man was found in possession of one of the weapons used to shoot the victim and gave a false name to police and fled when approached by police was sufficient to support the State's claim that the two men were involved in a conspiracy.); see also *Drane v. State*, 265 Ga. 255, 258 (4) (455 SE2d 27) (1995) (Evidence that the defendant and another man picked up the victim together, concealed evidence, and disposed of the body was sufficient to support an inference of an understanding between the men to murder the victim.).

5. O'Neal also asserts that he received ineffective assistance of counsel based on counsel's failure to: (a) object to a comment made by the prosecutor during closing argument; and (b) more vehemently object to the State's request for a charge on conspiracy.

In order to establish constitutionally ineffective assistance of counsel, a defendant must show that his counsel's performance was professionally deficient and that, but for such deficient performance,

there is a reasonable probability that the result of the trial would have been different. See *Strickland v. Washington*, 466 U. S. 668, 687 (III) (104 SCt 2052, 80 LE2d 674) (1984). If the defendant fails to satisfy either prong of the *Strickland* test, this Court is not required to examine the other. See *Green v. State*, 291 Ga. 579, 580 (2) (731 SE2d 359) (2012). With these principles in mind, we review O'Neal's claims of ineffective assistance.

(a) O'Neal first alleges that his trial counsel rendered ineffective assistance by failing to object when, during the State's closing argument, the prosecutor commented that O'Neal "was unable to tell you the truth of what happened to Joey Jackson."[3] He

---

[3] During this portion of the closing arguments, the prosecutor stated the following:

> And finally, I want to talk to you about Joey Jackson, who I haven't really talked about much at all since our first day of trial. This defendant is now older than Joey Jackson was at the time that he was murdered. And what Joey Jackson deserves from his community is justice. And that's what his family deserves as well. And justice isn't 66 percent justice or two-thirds justice. Justice is everybody who participated and played a role is held responsible. And the defendant was unable to tell you the truth of what happened to Joey Jackson. . . . But you have enough evidence, circumstantial and direct, to tell the truth about what happened to Joey Jackson. And the truth is that this defendant is guilty of participating in his murder.

17

argues that although the prosecutor may have been referencing O'Neal's initial statement in which he claimed the gun accidentally discharged while inside his fanny pack, it could have been construed by jurors as an improper comment on O'Neal's choice not to testify at trial.

We disagree. The challenged comment followed the prosecutor's summary of the evidence and was part of the State's argument that the jurors had the opportunity to "speak the truth" for Jackson by rendering a verdict of guilty. In this context, the prosecutor's comment could reasonably be understood as highlighting the falsity of the statements O'Neal actually made to investigators following his arrest and did not directly or necessarily implicate O'Neal's decision not to testify at trial. See *Smith v. State*, 279 Ga. 48, 49 (2) (610 SE2d 26) (2005) (Comments made by the prosecutor regarding a defendant's decision not to testify may constitute reversible error if "(1) the prosecutor's manifest intention was to comment on the accused's failure to testify, or (2) the remark was of such a character that a jury would naturally and necessarily

take it to be a comment on the accused's failure to testify." (citation and punctuation omitted)). Under these circumstances, any objection by trial counsel to the prosecutor's comment would have been without merit, and counsel's failure to object did not amount to ineffective assistance. See *Jackson v. State*, 306 Ga. 475, 479 (4) (a) (831 SE2d 755) (2019); *Wellons v. State*, 266 Ga. 77, 85-86 (10) (463 SE2d 868) (1995).

(b) O'Neal also argues that trial counsel rendered ineffective assistance by failing to adequately object to the State's request for a conspiracy charge. For the reasons explained in Division 4 above, there was sufficient evidence of a conspiracy presented at trial to support the giving of a charge on conspiracy. Accordingly, trial counsel's failure to object more vehemently to the giving of such charge would have been meritless and does not amount to ineffective assistance. See *Jackson*, 306 Ga. at 479 (4) (a).

6. Finally, we reject O'Neal's argument that the cumulative effect of the alleged errors so undermined his trial that a just result was not possible. In considering a claim of cumulative error, we

"evaluate only the effects of matters determined to be error, not the cumulative effect of non-errors." (Citation and punctuation omitted.) *Bulloch v. State*, 293 Ga. 179, 183 (2) (744 SE2d 763) (2013). As explained above, O'Neal has failed to show that the trial court erred in its instructions to the jury or that his trial counsel was professionally deficient in the manners alleged. Therefore, none of O'Neal's claims of error have succeeded, there are no errors to aggregate, and his claim of cumulative error also fails. See *Chapman v. State*, 290 Ga. 631, 635-636 (2) (e) (724 SE2d 391) (2012).

*Judgment affirmed. All the Justices concur.*

Decided May 16, 2023.

Murder. Oconee Superior Court. Before Judge Stephens.

*The Abt Law Firm, E. Jay Abt; The Hingerty Law Firm, Katie A. H. Borodin*, for appellant.

*Deborah Gonzalez, District Attorney, Sheila A. Ross, Assistant District Attorney; Christopher M. Carr, Attorney General, Beth A. Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Michael A. Oldham, Assistant Attorney General*, for appellee.