318 Ga. 752
FINAL COPY

S24A0092. HENDERSON v. THE STATE.

ELLINGTON, Justice.

A DeKalb County jury found Gavin Henderson ("Henderson") guilty of malice murder, cruelty to children in the first degree, and possession of a knife during the commission of a felony in connection with the fatal stabbing of his sister, Kiara Henderson.[1] Henderson contends the trial court erred in admitting prior-acts evidence, failing to charge the jury on the law of voluntary manslaughter, and

---

[1] On September 11, 2018, a DeKalb County grand jury indicted Henderson for malice murder (Count 1); felony murder (Counts 2-3); aggravated assault (Count 4); cruelty to children in the first degree (Counts 5 and 7); and possession of a knife during the commission of a felony (Count 6). Following a jury trial that ended on July 9, 2021, the jury found Henderson guilty on all counts. On that same date, the court sentenced Henderson to life in prison without the possibility of parole for malice murder; 20 years in prison for cruelty to children in the first degree (consecutive to Count 1); five years in prison for possession of a knife during the commission of a felony (consecutive to Count 5); and 20 years in prison for cruelty to children in the first degree (consecutive to Count 6). The felony murder counts were vacated by operation of law, and the aggravated assault count merged with the malice murder count. Henderson filed a motion for a new trial on August 3, 2021, and new counsel amended it on June 1, 2023. Following a hearing held on June 21, 2023, the trial court denied the motion for a new trial on July 10, 2023. Henderson filed a notice of appeal on July 12, 2023. The case was docketed in this Court to the term beginning in December 2023 and submitted for a decision on the briefs.

committing cumulative errors that require reversal. Because Henderson's claims of error are without merit, we affirm the trial court's order denying Henderson's motion for a new trial.

The evidence adduced at trial shows the following. In June 2018, 27-year-old Henderson lived in the Lacota Apartments in DeKalb County with his mother, Trayshelle Henderson, and his three siblings, 21-year-old Ceaira Henderson, 15-year-old Kiara, and 11-year-old Z. G. On June 18, Trayshelle and Ceaira left for work, leaving Kiara and Z. G. at home with Henderson. That afternoon, Henderson went to use the only bathroom in the apartment, but Kiara was in it. When Kiara did not leave the bathroom immediately, the siblings argued. Z. G., who was in a nearby bedroom, heard the argument.

As Henderson tried to force the bathroom door open, he wedged a clipboard (to which his cell phone was attached) between the door and the door frame. Kiara pushed the door closed, which knocked Henderson's cell phone to the floor, damaging it. When Kiara left the bathroom, the argument with Henderson escalated. Henderson

told the police that, at some point during the argument, he went to his bedroom to retrieve a knife. Z. G. heard the argument and heard Kiara threaten to call their mother; Kiara called her sister, Ceaira, instead and told her that Henderson had hit her. Z. G. then heard Kiara scream, so she left her room to see what was happening. Z. G. followed the sound of screaming to the apartment's front door.

When Z. G. peered outside to the apartment's breezeway, she saw Henderson striking Kiara in the abdomen with a "black metal thing." Z. G. yelled for her brother to stop, then she called the police and her mother. Neighbors also called the police. The neighbors reported hearing screaming in the breezeway and Kiara knocking on their doors for help. When officers responded to the apartment complex, they found Kiara lying on the breezeway floor. Her body was covered in stab wounds, and she was surrounded by large pools of blood.

Officers also received a 911 call from the manager of a convenience store located about a half mile from the apartment complex. The store manager said that Henderson, who had walked

into his store covered in blood and holding a bloody knife, told the manager to call the police because he had just "killed someone." After the manager called the police, Henderson put the knife on the store's front counter and began wandering around inside the store. When Henderson heard the sirens of the approaching police cars, he walked out of the store with his hands raised, surrendering.

As he was taken into custody, Henderson told the police to "just take him straight to county" and that if anyone in jail tried to "mess[ ] with him there, he would kill them, too." Officers retrieved the bloody knife — an all-black Bowie hunting knife with a ten-inch-long blade — from the store. Officers took Henderson to the precinct, where he later waived his *Miranda* rights and agreed to be interviewed. When the interviewing detective informed Henderson that his sister did not survive, he responded: "Thank God." Henderson went on to tell the detective that he had "blacked out" and was "in a trance" during the stabbing; however, he recounted in detail events leading up to and following the stabbing. He said that Kiara threw a glass bottle at him during their argument and that

4

when Z. G. called his name, he came out of his trance. Photographs of the scene admitted at trial showed an unbroken bottle on the floor.

The medical examiner documented 47 major stab wounds covering Kiara's entire body, including two to her face and several on her back. The medical examiner testified that the wound pattern indicated that Kiara was stabbed with rapid, repetitive motions. The shape of some of the wounds also indicated that the blade had been twisted while inside Kiara's body, either from her movements or her assailant's. The medical examiner also observed extensive defensive wounds to Kiara's hands and legs. The cause of death was determined to be multiple stab wounds to the face, torso, and extremities. The manner of death was homicide.

The State also presented evidence through the testimony of Ceaira and her mother that Henderson had violently attacked Ceaira a few months prior to the attack against Kiara. Ceaira testified that, after she had apparently offended Henderson by ignoring him, he argued with her, punched her, threw her to the floor, and then left the room briefly. When he returned, he was

5

holding a black hunting knife. Ceaira went to her bedroom and tried to call her mother, but Henderson followed her, took her phone, and put the knife to her face. Henderson then told Ceaira to "call the police, he was ready to go." When Ceaira started crying, Henderson left the apartment.

Trayshelle returned to the apartment when Ceaira called her and told her that Henderson had attacked her. When Trayshelle learned what had happened, she called Henderson back to the apartment and told him that Ceaira could press charges against him. Henderson, who was holding the knife he had used to threaten Ceaira, started "raging." Trayshelle took the knife from him and told him he could not be in the house with a weapon. She hid his knife, as well as the kitchen knives, in her bedroom closet.

1. Henderson contends that the trial court erred by admitting evidence of the previous "unrelated altercation" between Henderson and his sister Ceaira pursuant to OCGA § 24-4-404 (b) ("Rule 404 (b)"). Because evidence that Henderson had assaulted Ceaira with a knife following a petty argument two months prior to the charged

offense was admissible for purposes of proving Henderson's intent, the trial court did not abuse its discretion in admitting it.[2]

"We review the trial court's decision to admit evidence pursuant to Rule 404 (b) for a clear abuse of discretion." *Hood v. State*, 309 Ga. 493, 499 (2) (847 SE2d 172) (2020). "Rule 404 (b) is a rule of inclusion, but it does prohibit the introduction of other acts evidence when it is offered for the sole purpose of showing a defendant's bad character or propensity to commit a crime." *Booth v. State*, 301 Ga. 678, 682 (3) (804 SE2d 104) (2017). Therefore, "[i]t is well established that other acts evidence is not admissible 'to prove the character of a person in order to show action in conformity therewith,'" but "such evidence is admissible for other purposes,

---

[2] Henderson also contends that the trial court abused its discretion in allowing the prior act evidence to be admitted for the purposes of showing absence of mistake or accident. However, before Trayshelle and Ceaira testified, the trial court noted that it had not heard anything during the pretrial motion-in-limine hearing demonstrating how the proffered evidence was relevant for the purposes of showing absence of mistake or accident; consequently, it ruled that the evidence would be admitted only for the purpose of showing Henderson's intent. The court gave the jury limiting instructions consistent with this ruling prior to both Trayshelle's and Ceaira's testimony. Thus, Henderson's arguments on this point are not supported by the record and are without merit.

including 'proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.'" *Hood*, 309 Ga. at 499 (2) (quoting Rule 404 (b)).

> A party offering evidence pursuant to Rule 404 (b) must demonstrate three things: (1) that the evidence is relevant to an issue in the case other than the defendant's character; (2) that the evidence's probative value is not substantially outweighed by its undue prejudice; and (3) that sufficient proof exists for a jury to find by a preponderance of the evidence that the defendant committed the other act.

Id.

The trial court did not abuse its discretion in admitting the evidence for the purpose of proving intent. "Because [Henderson] entered a plea of not guilty, [he] made 'intent a material issue, and the State may prove intent by qualifying Rule 404 (b) evidence absent affirmative steps by the defendant to remove intent as an issue.'" (Citation omitted.) *Hood*, 309 Ga. at 499-500 (2). "The relevance of other acts evidence offered to show intent is established when the prior act was committed with the same state of mind as the charged crime." (Citation and punctuation omitted.) Id. at 500

(2). "Where the intent required for the charged offenses and other acts is the same, and intent is at issue, the first prong of the Rule 404 (b) test is satisfied." *Booth*, 301 Ga. at 683 (3).

In this case, in addition to malice murder, Henderson was charged in the indictment with committing an aggravated assault against Kiara by assaulting her and stabbing her with a knife, "an object which when used offensively against a person did result in serious bodily injury." See OCGA § 16-5-21 (a) (2) ("A person commits the offense of aggravated assault when he . . . assaults . . . [w]ith a deadly weapon or with any object . . . which, when used offensively against a person, is likely to or actually does result in serious bodily injury[.]").[3] Henderson's prior incident with Ceaira also involved acts which would constitute an aggravated assault with a knife, an "object . . . which, when used offensively against a person, is likely to or actually does result in serious bodily injury."

---

[3] OCGA § 16-5-20 (a) defines a simple assault as when a person either: "(1) Attempts to commit a violent injury to the person of another; or (2) Commits an act which places another in reasonable apprehension of immediately receiving a violent injury."

9

Id. The acts as alleged in the aggravated assault count of the indictment and the acts as testified to by Ceaira concerning the prior assault against her have in common the same general intent. Although aggravated assault can be charged in other ways that make the offense a specific intent crime, the way it was charged here is a general intent crime, requiring proof only that Henderson had the intent to (1) assault Kiara (2) with a knife, an object which, when used offensively against a person, is likely to or does result in serious bodily injury. See *Booth*, 301 Ga. at 684 (3). That Henderson intentionally assaulted another sister with a knife, a weapon which is likely to cause serious bodily injury, was relevant to show that he committed a similar act with the same sort of intent as alleged in the instant indictment. Because the intent required for the prior act and the charged offense of aggravated assault is the same, the first prong of the Rule 404 (b) test was satisfied. Id. at 686 (3).

Having concluded that the other-acts evidence satisfies the first prong of the Rule 404 (b) test, we turn to the test's second prong, which is controlled by OCGA § 24-4-403 ("Rule 403").

Rule 403 provides for the exclusion of relevant evidence where "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." In other words, other acts evidence should be excluded if it constitutes matter of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect. Factors to be considered in determining the probative value of other act evidence offered to prove intent include its overall similarity to the charged crime, its temporal remoteness, and the prosecutorial need for it.

(Citations and punctuation omitted.) *Hood*, 309 Ga. at 500-501 (2).

We recognize that the other-acts evidence was certainly prejudicial to Henderson, given that he was not charged with any crimes arising from his assault on Ceaira, which can increase the prejudicial impact of this evidence. See *Hood v. State*, 299 Ga. 95, 105 (786 SE2d 648) (2016) (noting that the admission of other-acts evidence poses greater danger where "the extrinsic activity was not the subject of a prior conviction" because "the jury may feel that the defendant should be punished for that activity even if he is not guilty of the offense charged" (citation and punctuation omitted)). "But in a criminal trial, inculpatory evidence is inherently prejudicial; 'it is

11

only when *unfair* prejudice substantially outweighs probative value that the rule permits exclusion.'" (Citation omitted; emphasis in original.) *Anglin v. State*, 302 Ga. 333, 337 (3) (806 SE2d 573) (2017). "Rule 403's exclusionary force is meant to be applied sparingly — primarily when the other-acts evidence has scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect." (Citations and punctuation omitted.) *Hounkpatin v. State*, 313 Ga. 789, 796 (2) (a) (873 SE2d 201) (2022).

In this case, the prior-acts evidence was not required to be excluded under Rule 403 because it was not substantially outweighed by unfair prejudice. The prosecutorial need was significant because Henderson claimed to have "blacked out" during the aggravated assault. He also argued that Kiara provoked him by attacking him with a bottle. Thus, the State needed evidence from which the jury could infer that his acts were intentional rather than defensive or committed while "blacked out" or "in a trance." See *Harrison v. State*, 310 Ga. 862, 868 (3) (855 SE2d 546) (2021). Further, the prior-acts evidence had significant probative value in

showing Henderson's criminal intent to violently assault his sister with a deadly weapon. The similarity of the acts against Ceaira to the charged crimes was strong — Henderson overreacted to petty arguments with his sisters by assaulting both with a large hunting knife. Finally, the prior act was not temporally remote. The incident with Ceaira occurred less than two months prior to the charged crimes. Given the strong probative value of the evidence in showing Henderson's intent and in rebutting any claim of self-defense, we see no abuse of discretion in the trial court's ruling that the probative value of the other-acts evidence was not substantially outweighed by any unfair prejudice. See *Harrison*, 310 Ga. at 868 (3). "This is particularly true given that the trial court instructed the jury, both prior to [Trayshelle's and Ceaira's] testimony and at the close of the evidence, that this evidence was to be considered only for the limited purposes for which it was admitted." Id.

As to the third and final prong of the Rule 404 (b) test, Ceaira's and Trayshelle's testimony was sufficient to establish by a preponderance of the evidence that Henderson did in fact commit

the acts about which they testified. Thus, we see no clear abuse of discretion in the trial court's admission of the other-acts evidence. See *Harrison*, 310 Ga. at 869 (3). This claim of error therefore fails.

2. Henderson contends the trial court erred in refusing to charge the jury on the offense of voluntary manslaughter. Voluntary manslaughter is the killing of another person under circumstances that would otherwise be murder when the killer "acts solely as the result of a sudden, violent, and irresistible passion resulting from serious provocation sufficient to excite such passion in a reasonable person[.]" OCGA § 16-5-2 (a).[4] At trial, Henderson submitted a written request for a jury instruction on voluntary manslaughter. Following arguments made by the defense and prosecution during

---

[4] OCGA § 16-5-2 (a) provides in full:

A person commits the offense of voluntary manslaughter when he causes the death of another human being under circumstances which would otherwise be murder and if he acts solely as the result of a sudden, violent, and irresistible passion resulting from serious provocation sufficient to excite such passion in a reasonable person; however, if there should have been an interval between the provocation and the killing sufficient for the voice of reason and humanity to be heard, of which the jury in all cases shall be the judge, the killing shall be attributed to deliberate revenge and be punished as murder.

the charge conference, the trial court denied Henderson's request. After the jury was charged, Henderson renewed his objection. Because there was no evidence that would support giving an instruction on voluntary manslaughter, the trial court did not err in denying the request.

"A trial court is required to grant a defendant's request for a charge on voluntary manslaughter if there is any evidence, however slight, supporting the theory of the charge." *O'Neal v. State*, 316 Ga. 264, 268 (3) (888 SE2d 42) (2023). "It is a question of law for courts to determine whether the defendant has presented sufficient evidence to warrant a requested charge." *Hudson v. State*, 308 Ga. 443, 445 (2) (841 SE2d 696) (2020). Although slight evidence will support giving the requested charge, "neither fear that someone is going to pull a weapon nor fighting are the types of provocation that demand a voluntary manslaughter charge." (Citation and punctuation omitted.) *Rountree v. State*, 316 Ga. 691, 694 (2) (889 SE2d 803) (2023). Further, "words alone generally are not sufficient provocation to excite the passion necessary to give rise to voluntary

manslaughter." (Citation and punctuation omitted.) Id. Additionally, this Court has held that "the voluntary manslaughter statute establishes an objective standard; the provocation required to mitigate malice is that which would arouse a heat of passion in a *reasonable* person." (Citation and punctuation omitted; emphasis in original.) *Watkins v. State*, 313 Ga. 573, 577 (2) (872 SE2d 293) (2022).

Henderson contends that the following evidence is sufficient to warrant a charge on voluntary manslaughter: 15-year-old Kiara argued with Henderson about his efforts to oust her from the bathroom; when Henderson tried to force open the door, Kiara caused his cell phone case to break; during the argument, Kiara threw a bottle at him; and Henderson believed Kiara was going to the kitchen to get a knife with which to attack him, which is why he got his own knife. He also contends that the "extreme" and "frenzied" nature of his conduct in stabbing Kiara 47 times in a public area suggests that he was "not acting out of conscious deliberation, but rather out of intense anger or rage, which also would support a

16

voluntary manslaughter conviction."

Although this evidence may have supported Henderson's motive for attacking Kiara, it is not sufficient as a matter of law to establish the slight evidence required to support giving a charge on voluntary manslaughter. The evidence does not show a "sudden, violent, and irresistible passion resulting from serious provocation sufficient to excite such passion in a reasonable person." OCGA § 16-5-2 (a). That Henderson and Kiara argued prior to the stabbing about access to the bathroom is not the type of provocation used to support voluntary manslaughter under Georgia law. Therefore, this heated exchange of words, without more, is insufficient provocation to warrant a jury charge on voluntary manslaughter. See *Johnson v. State*, 297 Ga. 839, 844 (2) (778 SE2d 769) (2015) ("As a matter of law, angry statements alone ordinarily do not amount to 'serious provocation' within the meaning of OCGA § 16-5-2 (a)." (citation and punctuation omitted)). Nor was Kiara's act of knocking a clipboard and cell phone out of Henderson's hand the kind of act that would excite the level of irresistible passion required under the law. See id.

17

at 842-844 (2). Further, there is no evidence that Kiara possessed or used a weapon against Henderson. Even if Kiara threw a bottle at Henderson and he acted to defend himself, "acting out of fear of bodily harm is not the same as acting in the heat of passion, and only evidence of the latter supports a voluntary manslaughter conviction." *Burke v. State*, 302 Ga. 786, 790-791 (2) (809 SE2d 765) (2018).

Because Henderson has not pointed to any evidence that 15-year-old Kiara provided any serious provocation that would have resulted in a reasonable person committing such a deadly act, we conclude that the trial court properly found that "[t]he argument between [Henderson] and his teenage sister over the use of the bathroom . . . was insufficient to generate in a reasonable person a sudden and irresistible passion to kill."

3. Finally, Henderson contends that the trial court's cumulative errors were not harmless and require reversal. To demonstrate cumulative prejudice that warrants a new trial, Henderson must show that "at least two errors were committed in

18

the course of the trial; [and] considered together along with the entire record, the multiple errors so infected the jury's deliberation that they denied [Henderson] a fundamentally fair trial." (Citation and punctuation omitted.) *State v. Lane*, 308 Ga. 10, 21 (4) (838 SE2d 808) (2020). Because Henderson has not carried his burden of showing that at least two errors were committed during the trial, this claim must fail. See id. We note that, because Henderson has failed to demonstrate any trial court error, we need not decide what type of error has been alleged, whether prejudice or harm has been shown under the standard applicable to that type of error, or how those standards may interact under a cumulative error review involving different types of errors. See id.

*Judgment affirmed. All the Justices concur.*

Decided April 16, 2024.

Murder. DeKalb Superior Court. Before Judge LaTisha Dear Jackson.

*Pearce, LLC, Forrest G. Pearce*, for appellant.

*Sherry Boston, District Attorney, Deborah D. Wellborn, Tabitha V. Pazmino, Assistant District Attorneys; Christopher M. Carr, Attorney General, Beth A. Burton, Deputy Attorney General, Meghan H. Hill, Clint C. Malcolm, Senior Assistant Attorneys General, Chelsea S. Harvey, Assistant Attorney General*, for appellee.