NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.

In the
# Supreme Court of Georgia

No. S26A0404
Tyler Merritt
v.
The State

On Appeal from the Superior Court of DeKalb County
No. 20CR26859

Decided: May 5, 2026

LaGrua, Justice.

Tyler Merritt challenges his convictions for malice murder and other crimes in connection with the shooting death of Wayne Cunningham.[1] Merritt contends that the trial court erred in

---

[1] The crimes occurred on January 26, 2020. On December 1, 2020, a DeKalb County grand jury indicted Merritt for malice murder (Count 1), two counts of felony murder (Counts 2 and 3), armed robbery (Count 4), aggravated assault (Count 5), possession of a firearm during the commission of a felony (Count 6), theft by receiving stolen property (Count 7), possession of cocaine with intent to distribute (Count 8), and possession of marijuana with intent to distribute (Count 9). The theft and drug counts (Counts 7–9) were severed for trial and ultimately nolle prossed. At a trial from December 16 to 19, 2024, the jury found Merritt guilty of malice murder (Count 1), felony murder predicated on aggravated assault (Count 3), aggravated assault (Count 5), and possession of a firearm (Count 6). The jury found Merritt not guilty on the remaining counts. The trial court sentenced Merritt to serve life in prison with the possibility of parole on Count 1 and a consecutive term of five years in prison on Count 6. Count 3 was vacated by operation of law, and Count 5 merged into Count 1. Merritt's trial counsel filed a timely motion for new trial, and new appellate counsel filed a motion asking that the trial court rule upon the

charging the jury on conspiracy. Because there was sufficient evidence to authorize the giving of a jury instruction on conspiracy, there was no error, and we affirm.

The evidence at trial, viewed in the light most favorable to the verdict, showed that Cunningham lived in Stone Mountain, worked in "construction," and had "issues with substance abuse." He was fatally shot at the Scottish Inn on Wesley Chapel Road in DeKalb County at approximately 4:20 p.m. on January 26, 2020. Surveillance video footage from the Scottish Inn was played at trial, and still photos from the video were also introduced into evidence. The surveillance footage showed that at 3:45 p.m. on January 26, Merritt, Quindarious Gray,[2] and two other men, who were never identified, arrived at the Scottish Inn in a stolen Kia Sorento.[3] A few minutes later, Merritt, Gray, Cunningham, and one of the two unidentified men walked to Room 307, with Merritt unlocking the door; the other unidentified man entered the room less than a minute later. Approximately 30 minutes later, Cunningham ran out of the room and then collapsed in the parking lot; he died as a result of two gunshot wounds to the torso. Approximately two minutes after Cunningham ran out of the room, Merritt, Gray, and the two unidentified men exited the room, covering their faces, and one of the men tried to cover the surveillance camera as he walked by it. Merritt and the other three men left together in the same car in which they had arrived.

---

motion on the existing record. On August 29, 2025, the trial court entered an order denying the motion for new trial. Merritt filed a timely notice of appeal, and the case was docketed in this Court to the term beginning December 2025 and submitted for a decision on the briefs.

[2] An investigating officer testified that Gray was not charged with any crimes related to "this case."

[3] Officers ran the license plate number of the Kia through the motor vehicle registration system, and the vehicle "came back as stolen."

2

Officers recovered several items from the room, including a cigarette butt, which was later determined to contain traces of Merritt's DNA, and a spent 9mm cartridge case, which was later determined to have been fired from a 9mm Glock found when Merritt was arrested.

Police utilized a license plate reader system to look for the stolen Kia. Officers received a "hit" on the Kia the day after the murder, showing that the Kia entered the A2B motel parking lot on Ember Drive, but the officers did not locate the Kia when they went to that location. The following day, two days after the murder, officers received another "hit" on the Kia at the Economy Inn on Glenfair Road, and police arrested Merritt near the car. The distinctive shoes Merritt was wearing at the time of his arrest were similar to the shoes Merritt was seen wearing on the Scottish Inn surveillance footage. Officers ultimately determined that Merritt had rented Room 140 at the Economy Inn using an assumed name; a driver's license with that assumed name was found on Merritt at the time of his arrest. In Room 140, officers discovered the Glock 9mm gun that fired the cartridges found in Room 307 of the Scottish Inn. Officers also recovered from Room 140 a debit card in Cunningham's name, the keys to the Kia, clothing that matched the clothes worn by Merritt in the surveillance footage from the Scottish Inn, and a "baby bottle" that appeared to be the same one carried by one of the unidentified men at the Scottish Inn.

The State also presented testimony about the phone records for the cell phone seized from Merritt upon his arrest and a cell phone number associated with Gray. Merritt's phone number "made back and forth contact with [Gray's] number about 20 times" on the day of the murder, including two phone calls between 3:03 p.m. and 3:11 p.m. There was also testimony that

both phones were utilizing the same tower and same sector near the Scottish Inn around the time of the murder and that there were no calls between those phones between approximately 3:30 p.m. and 5:00 p.m. that afternoon, which could indicate that the owners of the phones were together. Additionally, there was evidence that, shortly after the murder, Merritt's phone connected with Gray's phone, while both phones were using a tower that was a short distance away from the Scottish Inn. Merritt's phone also connected with Gray's phone at 12:46 a.m. the following morning. When the 12:46 a.m. call occurred, both phones were in the same area where a license plate reader captured a "hit" on the stolen Kia on the day after the murder.

In his sole enumeration of error, Merritt contends that the trial court erred by charging the jury on conspiracy because "the evidence did not establish any conspiracy to commit any of the charged crimes."[4] Merritt objected to the conspiracy instructions

[4] The trial court gave the jury the following charges on conspiracy:

A person commits conspiracy to commit a crime when that person, together with one or more persons, conspires to commit any crime and … any one or more of such persons does any overt act to bring about the object of the conspiracy. The crime subject of alleged conspiracy—malice murder; felony murder, two counts; armed robbery; aggravated assault; and possession of a firearm during commission of a felony—will be defined for you shortly. A conspiracy is an agreement between two or more persons to do an unlawful act, and the existence of a conspiracy may be established by proof of acts and conduct as well as by proof of an express agreement. When persons associate themselves in an unlawful enterprise, any act done by any party to the conspiracy to further the unlawful enterprise is considered to be the act of all the conspirators. However, each person is responsible for the acts of the others only insofar as

4

at the conclusion of the trial court's charge. We review de novo a properly preserved claim that the trial court gave an incorrect jury instruction. See OCGA § 17-8-58(a); *Bates v. State*, 317 Ga. 809, 819 (2023).

Even though the State did not charge Merritt with conspiracy, "[i]t is not error … for a trial court to instruct the jury on the subject of conspiracy when the evidence tends to show a conspiracy." *O'Neal v. State*, 316 Ga. 264, 269 (2023). And "slight, circumstantial evidence can form a proper evidentiary foundation for [a conspiracy] charge." *Shepard v. State*, 300 Ga. 167, 171 (2016) (quotation marks omitted). See also *Taylor v. State*, 312 Ga. 1, 15 (2021) (holding that "only slight evidence is necessary to warrant a charge on the subject of conspiracy" (quotation marks omitted)). The State may prove a conspiracy "by showing that two or more persons tacitly came to a mutual understanding to … pursue a criminal objective." *O'Neal*, 316 Ga. at 269 (quotation marks omitted). And "an inference that two or more people tacitly came to a mutual understanding to commit a crime can be drawn from the nature of the acts done, the relation of the parties, the interest of the alleged conspirators, and other circumstances." Id.

Here, there was more than slight evidence to support the inference that Merritt and at least one of the other men with him were involved in a conspiracy to commit a criminal act against Cunningham. The day of the murder, Merritt's and Gray's phones connected many times before arriving at the Scottish Inn. Merritt,

such acts are naturally or necessarily done to further the conspiracy. Whether or not a conspiracy existed in this case is a matter for you to determine. Presence, companionship, and conduct before and after the commission of the alleged offense may be considered by you in determining whether or not such circumstances, if any, give rise to an inference of the existence of a conspiracy.

5

Gray, and the other two men arrived at the Scottish Inn together in a stolen car and, shortly after arriving, walked with Cunningham to Room 307. Cunningham was shot while he was in the room with Merritt and the other men. After Cunningham ran out of the room, Merritt, Gray, and the other two men exited the room, trying to hide their faces, and all left together in the same stolen car. Merritt's and Gray's phones connected a short time after the murder and again several hours later. The cell phone location evidence also supported the inference that, after the murder, Merritt and Gray traveled in the same direction and remained in close proximity for several hours. The murder weapon, Cunningham's debit card, and the "baby bottle" carried by one of the unidentified men were found in a hotel room rented by Merritt under an assumed name. This evidence was sufficient to authorize the giving of a charge on conspiracy, and thus the trial court did not err in giving such a charge. See *Bates*, 317 Ga. at 820 (holding that the trial court did not err in giving a charge on conspiracy where the evidence showed that the defendant and one co-defendant confronted the victim while the other co-defendants waited nearby; that after the defendant shot the victim, all the co-defendants left together, stealing the victim's car and his cell phone; and that the defendant was together with or in contact with the co-defendants throughout the day of the crimes); *Smith v. State*, 306 Ga. 753, 758 (2019) (holding that the trial court did not err in giving a charge on conspiracy where the evidence showed that the defendant and his co-defendants "rode together to the house in their gang territory where [the victim] was planning to sell drugs," "fled the scene together after robbing and shooting" the victim, and "communicated with each other and were together before, during, and after the crimes"). Accordingly, Merritt's sole enumeration of error is without merit, and we affirm.

*Judgment affirmed. All the Justices concur, except Warren, P.J., not participating.*